THE STATE OF FLORIDA, EX REL. PARAN MOODY ET UX., VS. JAMES M. BAKER, CIRCUIT JUDGE, AND THE JACKSONVILLE, TAMPA AND KEY WEST RAILROAD COMPANY, RESPONDENTS.*

1. A section or a part of a section of a statute providing a method by a corporation of exercising the right of compulsory purchase of land may be unconstitutional. If, however, there are sufficient independent provisions constitutional in their character to provide a complete method of proceeding, effect will be given to such last named portions of the act and the condemnation authorized.

2. Section 20 of chapter 1987, being the general statute for the incorporation of railroads in this State, in so far as it authorizes a railroad company which has not acquired title to land upon which it has constructed its track to have an appraisal for the damages done to the owner thereof to remain in possession during the pendency of the proceedings, and to have a stay of all actions pending against the company on account thereof on such company paying into court a sufficient sum to pay the compensation therefor when finally ascertained, is constitutional. The rights of the several parties under this section, so far as it controls this case, determined. So also is there sufficient and adequate means to ascertain the value of the land constitutionally prescribed and fixed by the 14th section of the same act.

[*This case was decided at the June term, 1884. In view of its relation to the case immediately preceding it in this volume, it is inserted here.—REPORTER.]

3. The mode or method of exercising the right of eminent domain in the absence of any provision in the organic law regulating it is within the discretion of the Legislature. The limitation is that it shall be exercised for a public purpose, with just compensation ; and vesting the power of ascertaining it in a court and appraisers, is constitutional. It is not necessary that the owner shall have the right under the act to institute the proceeding to condemn the property, or that his right of action should be increased.

4. In cases of actions by land owners against railroad companies, the Legislature has the power to prescribe reasonable rules, staying such as seek to dispossess the company pending constitutional proceedings of condemnation by it.

5. Prior occupation of the land without authority of law even though it be a trespass, will not preclude the company from taking subsequent measures authorized by law to condemn the land for its use.

6. This court will not issue a writ of prohibition to the Circuit Court when it is acting within its constitutional powers in the enforcement of the constitutional provisions of the act above named.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion.

*Edward M. L'Engle* for Relators.

I. The suggestion upon which the rule to show cause was ordered recites, by way of introduction, the history of the subject matter concerning which the alleged usurpation of jurisdiction is attempted, and then suggests that the Judge of the Circuit Court of the 4th Circuit is about to give force and effect to so much of the act of 1874, chap. 1987, as provides for the exercise by private corporations of the right of eminent domain, which portion of the said act the relators claim to be unconstitutional, and that the proposed attempt to give effect thereto is consequently a usurpation of jurisdiction by said Judge and court.

The prayer is for a writ of prohibition to prohibit the

Circuit Court and the Judge thereof from appointing any commissioners under said act for the purpose of appraising or condemning the relators' land for the use of said corporation and from doing any other act under said statute to uphold or enforce any alleged claim by said corporation that it has the right of compulsory purchase of relators' land and from in any wise violating the mandate of this court, which was issued in the cause mentioned in the introductory portion of the suggestion.

The Circuit Judge is prevented by severe illness from making any return.

The railway company by way of return filed a demurrer and an answer which stand as pleas.

The relators join issue upon both pleadings.

As to the demurrer :

The first ground assigned is that a transcript of all the proceedings mentioned in the suggestion wherein acts of usurpation are declared to be about to be committed do not accompany the suggestion.

We answer that this is not ground for demurrer. And that if it be under any circumstances a good ground it cannot be assigned here because the supposed deficiency does not appear by the suggestion itself.

On the contrary, the suggestion alleges that a transcript of all the proceedings in the case duly certified accompanies the suggestion, which I now further say is a true and correct allegation.

The second ground of demurrer is that the proceeding suggested as an act of usurpation about to be committed by the Circuit Court is not opposed to the judgment of the Supreme Court lately rendered upon the statute under which the authority to do the act complained of is claimed by respondent to exist. *But on the contrary is within the jurisdiction and power of the said Circuit Court.*

JANUARY TERM, 1884.     619

State ex rel. v. J. T. & K. W. R. R. Co.—Argument of Counsel.

This ground of demurrer is identical with the matter set up by way of answer (pleas) as cause why the writ should not issue as prayed, and will be discussed with it.

The third ground of demurrer is that the suggestion itself discloses that the relators have a full and complete remedy by appeal.

The suggestion is that the Judge of the Circuit Court is about to proceed to enforce an unconstitutional statute. Of course if the statute is unconstitutional judicial action under it would be a usurpation of power, and the writ of prohibition would be the proper remedy.

Proceedings by prohibition are an appropriate method of enquiring into the constitutionality of a statute and of judicial action under it.   Harriman vs. Co. Com'rs, 53 Maine, 83 ; Sweet vs. Hurlbert, 51 Barbour, 312 ; So. Ca. R. R. Co. vs. Ells, 40 Georgia, 87 ; People vs. Works, 7 Wendell, 487 ; Quimbo Appo vs. The People, 20 N. Y., 531.

The constitutionality of a statute may be inquired into and determined in mandamus proceedings.   People *ex rel.* D. & S. R. R. Co. vs. McRoberts, 62 Ill., 38 ; People *ex rel.* vs. Williams, 51 Ill., 63.   Why not, then, in prohibition proceedings, which are the counterpart of the other ?   High on Extraordinary Remedies, §763.

The fourth ground of demurrer is that the suggestion does not contain facts sufficient to support the prayer of the relators.

Our remarks and authorities on the 3d ground of demurrer are applicable also to this one.

The answer of the respondents, 1st, denies the allegation of the suggestion, to wit : that this court has decided that that portion of the said statute which authorizes the taking of private property for public use is unconstitutional and void.

2d. It avers that this court confined its judgment to the

17th and a part of the 14th sections of said act, and that respondent claims the right to proceed under the 20th section, as to which this court has made no decision.

3d. It avers that the proceedings complained of and suggested as ground for writ of prohibition are in harmony with the judgment of this court *and within the jurisdiction of the Circuit Court.*

These three denials and averments in the answer and the 2d ground of demurrer raise the whole merits of the controversy, to wit:

1st. Whether or not this court has decided that that portion of the statute which authorizes the taking of private property for public use is unconstitutional and void.

2d. If the judgment of this court already rendered and its opinion do not practically embrace the 20th section, does that section warrant the exercise of the jurisdiction claimed for the Circuit Court.

As to the first point I shall not undertake to interpret for this court its own opinion and decree. But, in vindication of the interpretation which I put upon them, (viz: that they completely annihilate all that portion of the statute which authorizes the taking of private property for public use) I cite from Moody and Wife vs. The Jacksonville, Tampa and Key West Ry. Company *et al.*, Head Note 5: "The court had no power to authorize a compulsory purchase," &c. "So much of chapter 1987 of the Laws as proposes to vest in railroad corporations the right to condemn property and to fix the compensation to be made, construed." Ib. opinion: "This leads us to the discussion of the true question in this case, and that question is whether the act of the Legislature under which such claim [of the right to exercise the power of eminent domain] is here made assures to the owner of the private

## JANUARY TERM, 1884.  621

State ex rel. v. J. T. & K. W. R. R. Co.—Argument of Counsel.

property proposed to be taken the just compensation contemplated by the Constitution."

Ib. opinion: " We have no doubt at all that that portion of the statute [sections 14, 15, 16, 17 and 18] which authorizes the taking of private property and which we have been considering is unconstitutional and *void*."

Ib. opinion: " Our plain duty requires us to say, as Chancellor Walworth says he would have been constrained to say of a similar act, that the provision authorizing an appropriation of plaintiffs' property here is unconstitutional and *void*."

Ib. opinion : " The court thus, in the absence of any act of the Legislature authorizing this company to exercise the right of eminent domain, authorizes it to do so."

Ib. decree: * * * "All orders herein made are set aside except the injunction granted upon the filing of the bill and that will be revived to continue until * * * * the corporation may be granted the right of compulsory purchase of the land of the plaintiff by the proper authority and just compensation is made to him therefor," &c.

With these questions I pass to the second point, viz: If the judgment of this court already rendered, and its opinion do not practically embrace the 20th section, does that section warrant the exercise of the jurisdiction claimed for the Circuit Court, and shall discuss it first from the standpoint of the respondent, viz: that the section undertakes to confer the jurisdiction.   Which is not my opinion, as I show further on.

That section says: " In any case when a railroad * * company shall not have acquired title to any land upon which it has constructed its track, * * * the company may proceed to acquire * * * such titles in the same manner as if no appraisal had been made."

That is the whole of the provision of this section which

attempts to confer upon the respondent (as claimed by it) the right of compulsory purchase of private property.

Railroad and canal companies, under the circumstances mentioned in this section, may, the section says, do what this court has said they cannot do and in precisely the manner which this court has condemned and by the identical questions and provisions of the statute which this court has declared to be unconstitutional and void. If void, those preceding provisions cannot by reference to them be made to exist to serve a purpose elsewhere in the act.

The principles and reasoning which make them unconstitutional and void in the sections where they are found in the very words, apply with equal force to them in the 20th section where they are found only by reference.

The section after providing in the above words for, (as the respondent claims,) the compulsory purchase of lands (and the above is the whole of the provision on the subject) further declares that at *any stage* of such proceedings the court shall again violate the Constitution by allowing such corporation to take and keep private property without making just compensation.

Not satisfied with this, the section goes on to say still further that if when the court has obeyed the above mentioned imperative command any actions or proceedings should be instituted against such company* on account of its taking and keeping of private property in defiance of the constitutional prohibition the court may stay them on the condition that such company either pay into court a sum of money or give security as alternatively the court may direct (the sufficiency of the sum of money or of the

[*Note.—If the taking or keeping be lawful, no action would lie against the company. 7 N. H., 70, 72.]

security to be determined *by the court*) to pay the compensation for such real estate when finally ascertained.

This money or security be it noted is not provided by that portion of the statute which attempts to give the right of compulsory purchase and regulate its exercise and is not provided absolutely and in any event for the production of the land owner to pay his "just compensation," but is pro-vided only as a condition upon which the court may stay actions and proceedings against the company for its trespass.

But let us extend the operation of the condition as far as the most liberal construction can ask. The section would then read thus: " And at any stage of such new proceedings the court *shall authorize* the corporation, if in possession, to continue in· possession, and if not in possession, to take possession and use such real estate during the pendency of such new proceedings," provided, such company pay into court, &c.    *    *    *    "And"(at any stage, &c., the court) " may stay all actions or proceedings against such company on account " of its unlawful taking of private property, provided such company pay into the court, &c.

But this reading of the section does not help it. It is as unconstitutional by this rendering as it is by the other.

The statute cannot, under the Constitution, authorize a corporation to take or keep possession of private property 'till just compensation has been made or authorize a court to refuse its remedies, when invoked, for such unlawful acts. Consequently that state of facts cannot exist, in view of which the sum of money is to be paid into court or security given, and neither of those conditions can ever be imposed or demanded.

A provision in the Laws of Wisconsin similar to this

624 SUPREME COURT.

State ex rel. v. J. T. & K. W. R. R. Co.—Argument of Counsel.

20th section, has been passed upon by the Supreme Court of that State. 80 Wis., 105.

Its decision sustains the view taken of this 20th section, by me in brief filed in the case of Moody and wife vs. The Jacksonville, Tampa and Key West Railway Company *et al.*, decided at the last term of this court, and which I now re-iterate, viz : that this 20th section applies " only to cases where a court of equity without this statutory provision and on general well established principles would relieve against actions by a land owner who had permitted a corporation to appropriate his land and construct its track or canal thereon, or who had acquiesced in its defective proceedings for condemnation or had voluntarily given a title which proved defective." Laws of Wisconsin, 1861, chap. 175 ; Bohlman vs. G. B. & L. P. Ry Co. *et al.*, 30 Wis. R., 105 ; Burns vs. W. & M. R. R. Co., 9 Wis., 450 ; McAuley vs. W. V. R. R. Co., 33 Vermont, 311 ; Carson vs. Coleman, 3 Stockton, 106 ; Piscataqua Bridge vs. N. H. Bridge *et al.*, 7 N. H., 70.

The interpretation of the 20th section contended for by the respondent would require that a trespass should be committed in order to take advantage of its provisions. An unoffending corporation could not proceed under it.

The whole case and argument of the respondent, as the exhibits attached to its own pleadings show, are founded on a violation of property rights, a gross and flagrant trespass without which it could have had no opportunity of invoking the 20th section.

It claims that by its wrong-doing it is in a better position under the law than it could have been if innocent of wrong. That is the true meaning of its argument. There is no escape from it and such an argument makes the provisions of the 20th section amenable to the criticism with which this court closes its opinion in the case of Moody vs. Ry.

JANUARY TERM, 1884. 625

State ex rel. v. J. T. & K. W. R. R. Co.—Argument of Counsel.

Co., *supra*. " Surely a court of equity cannot say to a land owner: you shall submit to a trespass; you shall part with your land, whether you desire to do so 'or not, at a price which commissioners may value it at, and that too in a case instituted by the land owner praying protection from this very act of illegal appropriation."

II. The respondent corporation raises the point that "there has been no effort to obtain relief in the court below," and asks the court for this reason " to consider *in limine* whether it will grant the extraordinary remedy."

The rule is in regular suits, when there are parties and pleadings before the court, that any alleged usurpation of jurisdiction by the court must be brought to its attention in order that it may have an opportunity of receding from its position. But this rule does not hold in such irregular and anomalous proceedings as that in which the usurpation here complained of is suggested as occurring. That is purely an *ex-parte* proceeding; there are no pleadings and no citation of the land owner before the Circuit Judge. The land owner has no right to be heard. It is no more incumbent on him than it is on any other citizen to advise the court to pause and reflect whether it has authority to grant the *ex-parte* petition of a corporation. The statute gives the land owner no opportunity of having any knowledge until after the court has exhausted its power by appointing the commissioners. There is no provision for any proceedings by which the land owner may bring any such question or any other question before the court.

Heretofore in discussing the 3d ground of demurrer, I cite reported cases which arose upon proceedings similar to the proceeding under our statute, chapter 1987. The court made no such requirement in any of them as this respondent now asks this court to make.

In Quimbo Appo's case, 20 N. Y., the ·States Attorney refused to appear tó the motion in which the court proposed to exercise the questioned authority but resorted at once to the appellate court for prohibition, which was granted.

But the fact is that the court heard long argument upon the very point of the jurisdiction claimed for it, the defect of jurisdiction having been brought to its attention by the relators here in the only mode open to them. This is shown by the exhibits filed with pleadings in this application. Can it be said that the question of jurisdiction was not squarely before the court below in the argument to which its opinion, filed in this proceeding, refers?

Was there any other question before it? Was not that the only question? And does not the court treat of that only in its lengthy opinion sustaining the constitutionality of the statute and therefore sustaining its jurisdiction?

If this court should think that the proceeding complained of was of such a character as allowed a remedy being sought in the court below by in some mode calling the court's attention to its proposed usurpation, and that the suggestion should contain the allegation that it was done; ·then we say, as above, that the court's attention was elaborately and emphatically called to its lack of jurisdiction, and that the fact appears in the record before this court. And we further say that as to the absence of such allegation in the suggestion it can be raised only by demurrer, and that the suggestion is amendable in this as in other particulars.

That the whole case, pleading as well as merits, was submitted to this court upon the understanding of counsel and the intimation of the court that technicalities would not be allowed in any manner to embarrass the discussion by counsel, or the consideration by the court, of the vital ques-

tions involved, which were and are : 1st. Has this court already decided against the power claimed for the Circuit Court? 2d. If not, has the Circuit Court such power and jurisdiction? 3d. Is an application for prohibition a proper method of determining whether or not the jurisdiction claimed for the Circuit Court exists? But for such understanding and intimation we would have required the demurrer to be argued and determined first and would have had the pleadings settled and perfected before submitting the case on the merits so that only the main questions could have been considered upon the final argument. If the court should, nevertheless, think there is a material defect in the suggestion in the respect indicated we ask leave in view of all the circumstances to amend instanter without prejudice to the status of the case.

This proceeding is not governed by technical rules. The courts consider each case upon its own merits and grant or refuse the writ as may be proper under the circumstances. Quimbo Appo's case, *supra;* High on Extraordinary Remedies, §765.

In the brief filed for appellant in the case of Moody & Wife vs. The J., T. & K. W. Ry. Co. *et al.*, I discussed to some extent the 20th section of the act, ch. 1987. I now adopt for the purpose of this case as much of that argument as is applicable here, and quote therefrom as follows :

" It has been contended that if the provisions of the statute would be otherwise unconstitutional the objection of no security for payment is cured by section 20 when it says that ' at any stage of such new proceedings, &c., &c.' But the construction which I have given above to this section is the only one which will save it from being itself unconstitutional because otherwise the statute would provide in express words that when a land owner resorts to his common law right of action to repel, restrain or get dam-

ages for an unlawful taking of his property, the courts may stay him and compel him to accept such security as the court may direct.

" This would not be a proceeding by the law of security for the compensation for the taking of private property. It would be remitting the land owner to his legal remedy, (and that the authorities say is not just compensation) which, when invoked, the courts may stay. The statute does not establish the security. On the contrary, it compels the land owner to go into the courts to get what they may choose to give him. The construction of the statute contended for by the other side would provide a commission to ascertain the compensation, that is the value of the land and the amount of the damages, and would at the same time, by allowing the court to fix the amount of the security, substitute the judgment of the court as to what that value and amount should be.

" Section 20 cannot refer to the taking under section 14 and be a part of the proceedings then provided for because if the taking and those proceedings are constitutional, ' no actions or proceedings' on account thereof could be had by the land owner. He would be confined to the remedy provided by such statute." Heninker vs. Contoocook Valley R. R. Co., 29 N. H., (9 Foster) 152, and authorities cited ; also Brown vs. Beatty, 34 Miss., 243–4, and authorities cited.

" If the statute does not provide a means of getting compensation other than ' actions or proceedings,' which the court enjoin, it is not constitutional. This is a crucial test. 50 N. H., 616."

Discussing the 20th section again from the standpoint of the respondent I further say that if the condition upon which the court is permitted or commanded to act be held to apply so that the section would read thus : " And at any

stage of such new proceedings the court shall authorize the corporation, if in possession, to continue in possession, and if not in possession to take possession and use such real estate during the pending of such new proceedings on such company, paying into court a sufficient sum or giving security, as the court may direct, to pay the compensation therefor when finally ascertained," and if all other objections which I have raised to its constitutionality be held bad, and the money or security named by the court be held to be that contemplated by the constitution instead of what I say it is, I still say that the section would be unconstitutional because provision for the payment of the land owner would not be certain, absolute, prompt and necessarily sufficient.

The court might require a much less sum to be paid into court or secured than the commissioners might find the land owner entitled to and there would be no redress.

Again. The corporation may, by simply filing its petition, put the law in operation and get possession or be continued in possession of the land, and might never proceed any further so as to enable the land owner to get his money, the statute not allowing him to be the actor therein. For this reason, if for no other, the statute is unconstitutional. B. B. & C. R. R. Co. vs. Ferris, 26 Texas, 601; Walther vs. Warner, 25 Mo., 277 ; White vs. N. & N. R. R. Co., 7 Heisk., (Tenn.) 518, and other authorities cited in my brief above referred to upon this proposition.

*Note.*—The brief referred to cites the above and numerous other authorities in support of its three main propositions of which the above is one. I have no access at this time to the authorities and am unable to recollect or otherwise distinguish which other of the said authorities are applicable to the proposition last above propounded. This

must be my apology for referring to cases some of which may not be pertinent.

*Fleming & Daniel* for the Railroad Company.

This cause comes on for hearing on the demurrer and answer of defendants to the rule to show cause issued by this court on the filing of the suggestion of plaintiffs.

But before entering upon the discussion of these questions we ask the court to consider whether it will grant the extraordinary remedy when there has been no effort to obtain relief in the court below.

" Where there has been no effort made to obtain relief in the court which it is sought to prohibit, the Superior Courts will refuse to exercise their jurisdiction by this extraordinary remedy." High on Extraordinary Remedies, 2d Ed. sec. 773, citing *Ex-parte* McMeechin, 12 Ark., 70 ; *Ex-parte* City of Little Rock, 26 Ark., 52 ; *Ex-parte* Hamilton, 51 Ala., 62 ; State vs. Judge of 5th Dist. Court, 29 La. An., 306 ; Hudson vs. Judge of Supreme Court, 42 Mich., 239 ; South Pac. R. R. Co. vs. Sup. Court, 59 Cal., 471.

If it is asked what effort could be made to obtain relief in the court below, counsel for plaintiffs contends that the proceedings sought to be prohibited have no connection with the equity suit. If it is a separate suit no question has been made in it as to the right of the Circuit Court to entertain the petition. Certainly all questions which could arise in a suit could be raised by demurrer or answer to the petition and the inferior court would be obliged to pass upon them.

Passing to the questions raised by the demurrer and answer :

As to the first ground of demurrer that a transcript of

JANUARY TERM, 1884. 631

State ex rel. v. J. T. & K. K. R. R. Co.—Argument of Counsel.

all the proceedings do not accompany the suggestion and writ, no transcript accompanied the copy of the suggestion sent to defendants. On examining the transcript on file in this court, a copy of all the record appears excepting copies of the motion, which being sufficiently embodied in the order of the Circuit Judge reviving and dissolving the injunction, we do not insist upon this ground.

The second ground of demurrer is that the petition of the Jacksonville, Tampa and Key West Railway Company and the proceedings contemplated thereon, as suggested by the relators or plaintiffs, as the applicants for the writ are called in the statute, are not opposed to the judgment of the Supreme Court in the case of Paran Moody and wife against the Jacksonville, Tampa and Key West Railroad Company decided at its last January term and are within the jurisdiction and powers of the Circuit Court of the Fourth Circuit of Florida for Duval county.

This ground of demurrer is in substance the same defence that is made in the answer in the words following: "This respondent answering denies that the Supreme Court, by its judgment and decree rendered at the last January term in the case of Mary L. Moody and Paran Moody against the Jacksonville, Tampa and Key West Railway Company, as suggested by the relators, decides that that portion of the said statute, to wit: chapter 1987, Laws of 1874, approved February 19th, 1874, which authorizes the taking of private property for public use, is unconstitutional and void," but on the contrary, this respondent doth aver that the Supreme Court, by its said judgment and decree, decides only as to the constitutionality of section 17 and a part of section 14 of said act, and did not make any judgment or decision as to the constitutionality of the 20th section or other parts of said act on which rests respondent's petition of the 14th day of June, 1884, and the pro-

ceedings thereon.    We will consider this point as set up in
the demurrer and answer together.    We understand the de-
cision of this court as rendered in the case of Moody and
wife vs. The Jacksonville, Tampa and Key West Railway
Company, as the Circuit Judge does, and we adopt
his exposition and argument.    Read Judge Bakers's opin-
ion filed June 23d, 1884.

In this opinion the Circuit Judge gives his reasons for
the conclusion, that the whole law was not declared uncon-
stitutional, and that the 20th section is in force, and in the
present situation of the parties provides a constitutional
mode by which the lands can be retained and the title ac-
quired by the railroad company, and the plaintiff, Mrs.
Mary L. Moody, a sure mode of payment for the land.

Said section is in words following, to wit:

" Sec. 20. In any case where a railroad or canal company
shall not have acquired title to any land upon which they
have constructed their track or canal, or if at any time
after an attempt to acquire title by appraisal of damage or
otherwise it shall be found that the title thereby attempted
to be acquired is defective, the company may proceed anew
to acquire or perfect such title in the same manner as if no
appraisal had been made, and at any stage of such new
proceeding the court shall authorize the corporation, if in
possession, to continue in possession, and if not in possession
to take possession and use such real estate during the pend-
ency of such proceedings, and may stay all actions or pro-
ceedings against such company on account thereof, on
such company paying into the court a sufficient sum or
giving security as the court may direct, to pay the compen-
sation therefor when finally ascertained.    No injunction
shall be granted until said compensation has been fixed and
determined."

This section we contend is adapted to and fits our case,

and it is constitutional because it affords an adequate remedy to the land owner for compensation. Our constitution does not require pre-payment.

" In the absence of distinct provision in the constitution requiring the pre-payment of compensation, such pre-payment need not precede an entry for the construction of a railroad, if some existing law affords an adequate remedy for obtaining it, and the provision is complied with if in the place of such pre-payment a deposit of a certain amount in court, or a bond with sufficient sureties, the amount and sufficiency to be determined by some impartial tribunal." Pierce on Railroads, p. 64; Cooley on Const. Lim., 5th Ed., 697; 1 Rec. on Rys., 5th Ed., 296, 299, and notes 5, 6 and 7; Cairo and Fulton R. R. Co. vs. Turner, 31 Ark., 494 ; 25 Am. Rep., 564, 567 ; Bloodgood vs. The Mohawk & Hudson River R. R., 18 Wend., 9, 16, 17, 18, 277; Fox vs. West. Pad. R. R. Co., 31 Cal., 538.

" When land is ' taken ' for public use, land is not taken for public use in the sense in which the word ' taken ' is used in the constitution, until the last act has been performed which, under the mode of condemnation adopted, is required to transfer the title or subject it to the servitude." Fox. vs. The West. Pac. R. R. Co., 31 Cal., 538.

It may be said that the 20th section provides no mode of ascertaining the value of the land and therefore it cannot be used by the corporation.

" But there is no reason why the compensation to be made may not be ascertained by any appropriate tribunal capable of estimating the value of the property. There is nothing in the nature of the matter to be determined which calls for the establishment of any special tribunal by the appropriating power." United States vs. Jones, 109 U. S., 519; Kohl vs. The U. S., 91 U. S., 367.

But it is said that while this may be true in the case of

a sovereign power like the United States, the principle does not apply to a corporation.

It is no longer a question that land for a railroad is a public use. The right to take it is given by the State, and with the right is transferred all the power to take.

The question to be determined in this proceeding is the constitutionality of the said 20th section of the general act for the incorporation of railroads and canals.

This question was certainly raised in the equity suit by the decree reviving and dissolving the injunction rendered after the filing of the supplemental answer, and it could have been raised in the suit instituted when the petition was filed.

Was not ample remedy afforded the plaintiffs by appeal to this court from any judgment or decree of the Circuit Judge ?

In all cases where the party aggrieved has an ample remedy by appeal prohibition will not lie. High on Extraordinary Remedies, (2d Ed.) secs. 770 and 771, and authorities cited in notes 1 and 2.

In the cases cited by plaintiffs to sustain the original jurisdiction of this court in considering constitutional questions it does not appear that these questions in the matters involved could have been determined by the inferior tribunal.

If the practice is established that the question of the constitutionality of a law arising in proceedings pending before a Circuit Court may be originally passed upon by the use of this writ, it may be very convenient and expeditious to those invoking its aid, but it would double the business of this court, and in our humble judgment it would not be in accordance with the best precedents.

The writ is not one of absolute right, and its use should be controlled and limited by the discretion of the court.

II. In reply to the brief of E. M. L'Engle:

It is contended by counsel for plaintiffs that proceedings by prohibition are the appropriate method of enquiring into the constitutionality of a statute and of judicial action under writ, and several authorities are cited to the point. This is undoubtedly so when there is no other remedy.

In the case cited from 53 Maine, Harriman vs. The County Commissioners, the court says there was no other remedy. 53 Maine, p. 88.

Sweet vs. Hulbert, 51 Barbour, was not a suit pending in an inferior court and there was no special provision for an appeal.

The South Carolina Railroad Company vs. Ells, 40 Ga., p. 37, came before the Supreme Court of Georgia on a regular appeal from a decision of a Judge of a superior court, and is not in point as a precedent for this proceeding.

In the People vs. Works, 7 Wendell, 437, the motion was not resisted. The case does not seem to be a well considered one, as the court there granted a writ of prohibition to a Tax Collector to stay proceedings under a warrant in his hands.

Judge Bronson, in The People vs. The Supervisors of Queens County, 1 Hill, 195, in a similar case, held that the writ would not lie, and besides clearly, in The People vs. Works, there was no remedy by appeal.

The case of Quimbo Appo, cited from 20 New York, 531, seems to be more in point, but it will be observed that it was a criminal case and the writ was invoked by the State. Did the State have a right to appeal? If it did not, there was no other remedy.

As to what was decided by this court in the former case between the same parties:

It seems to us too plain for argument that the whole law was not declared unconstitutional.

The court expressly declares that it only considered one part of it. "As to any other part we say nothing." It considered and condemned that part of the law which as to compensation required nothing more than that " the report of the commissioners shall be recorded by the Clerk of the Court in whose office the same is filed in the judgment book of said court." And the court concluded that a taking of private property upon such simple finding of the amount of compensation due is clearly a " taking of private property without just compensation."

And the conclusion would be the same if it could regard the finding as a judgment, for a judgment in its opinion is not compensation, and to support this latter doctrine quote the distinguished authorities of Chanceller Kent and Chief-Justice Sharkey.

And it is that portion of the law which authorizes the taking of the property on the finding of the commissioners or judgment of the court, which the court is considering when it says: " We have no doubt at all that that portion of the statute which authorizes the taking of private property, and which we have been considering, is unconstitutional and void. As to any other part of it we say nothing."

What does Chancellor Walworth say in the case of Bloodgood vs. The Mohawk and Hudson River Railroad, cited from 18 Wend., alluded to in the opinion, " the compensation must be either ascertained and paid to him before his property is thus appropriated, or an appropriate remedy must be provided and upon an adequate fund," &c.

What action of the Circuit Court was condemned ? Its proceedings under that part of the law which did not secure adequate compensation, "for neither a bond nor a judgment of this kind answers the requirement of the constitution in this particular."

We contend that the proceeding authorized by the 20th section is not liable to the objections sustained by this court to the other portions of the law, and that the principles and reasoning which make them unconstitutional and void do not apply to this section. It comes up to the requirement of Judge Dixon in Bohlman vs. The Green Bay and Lake Pepin Railway Company. 30 Wis., 107.

By it "an adequate and safe fund has been provided from which he (the land owner) may at some future time be compensated."

In the case at bar the money has been actually brought into court.

We regard the reasoning of Judge Baker, in his opinion filed as Exhibit E to the answer of the railroad company, page 18, as well considered and conclusive, and ask for a careful consideration of it by this court.

Section one of chap. 175 of the Laws of Wisconsin, approved April 6th, 1861, we contend is not similar to the 20th section of our act. The adequate and safe fund is not thereby provided. And the decision in Bohlman vs. The Green Bay and Lake Pepin Railway Company construing this law is not authority for this court, for in Wisconsin compensation must first be made. 22 Wis., 581; 30 Wis., 105.

"Decisions in States which have constitutions requiring pre-payment would not be much guide in regard to the general rule." 1 Redfield on the Law of Railways, (5th Ed.) p. 293, note.

The provision in the constitution of Indiana of 1816, was: "No man's property shall be taken without a just compensation being made therefor."

The provision of our constitution is: "Nor shall private property be taken without just compensation."

Words almos identical and the same in meaning.

The present constitution of Indiana requires pre-payment.

The Supreme Court of that State has recently (September 17th, 1883) decided that under the old constitution, that of 1816, a railroad company was justified in appropriating land for its right of way without first making compensation therefor. Prather vs. The Western Union Telegraph Company. Advance case reported in 14 Am. and Eng. R. R. Cases, p. 1.

"Compensation is a primary requisite, but the time when it is to be made depends upon constitutional provisions or on the requirements of the statute bestowing the power." 14 Am. and Eng. R. R, Cases, p. 18 ; note at end of Prather vs. The West. Union Telegraph Co.

The constitutions of all the States prohibit the taking of private property by virtue of the power of eminent domain without making due compensation. Unless, however, the constitutional provision be express, the compensation need not be pre-paid when the land owner has a sufficient existing remedy. See 14 Am. and Eng. R. R. Cases, p. 19, citing Johnson vs. Joliet &c., C. R. R., 23 Ill., 202; Townsend vs. Chicago and A. R. R., 91 Ill., 545 ; Haverhill Bridge Proprietors vs. County Commissioners, 103 Mass., 120 ; Simms vs. Memphis C. & L. R. R. Co., 12 Heisk., 621 ; Bonaparte vs. C. & A. R. R., Bald., 205 ; Bloodgood vs. Mohawk and H. R. R., 14 Wend., 51, s. c., 18 Wend., 9 ; Fox vs. West. Pac. R. R., 31 Cal., 538 ; Raleigh and G. R. R. vs. Davis, 2 Dev. and B. 451 ; Commissioners vs. Pitts. & C. R. R., 58 Pa. St., 26 ; Danville, H. & W. R. R. vs. Commissioner, 73 Pa. St., 29 ; Lehigh Valley R. R. vs. McFarlen, 4 Stew. N. J., 706 ; Hatch vs. Vermont Cent. R. R., 25 Vt., 49 ; New Alb. and S. R. Co. vs. Connelly, 7 Md., 32 ; Jeffersonville M. & I. R.

R. vs. Dougherty, 40 Ind., 33 ; Prather vs. Jeffersonville M. & I. R. R., 52 Ind., 18.

In conclusion, we desire specially to ask the court's attention to the fact that the plaintiffs before applying for this extraordinary writ had filed their bill in equity and obtained an order enjoining the proceedings which it is now sought to prohibit.

This equity suit is inseparably connected with the proceedings now before the court, and must be considered with it to the extent, if no more, of showing that the plaintiffs have an ample remedy, and have themselves sought such a remedy in chancery.

It may be said that the plaintiffs filed their bill to enjoin the condemnation under the first petition. Note, however, no objection was made to the filing by the defendants of their supplemental answer, setting up the petition and proceedings now sought to be prohibited.

That no exceptions were taken to the answer; that the plaintiffs consented to argue the defendant's motion, on the filing of this supplemental answer, to vacate the injunction which had been revived under the order of this court. That this motion was argued by plaintiffs' counsel; that the court having vacated the restraining order, an appeal lay to this court, and if not taken, it has been through the omission or neglect of plaintiffs' counsel so to do. In a word, the plaintiffs have sought and have ample relief in a court of equity for the very matter which they now seek to have enquired into, under their summary and extraordinary proceedings originally in this court.

We trust the court will not sanction the practice.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

This is a proceeding by writ of prohibition to the Judge

of the Circuit Court for the Fourth Judicial Circuit of Florida.

The pleadings are as follows:

*To the Honorable, the Justices of the Supreme Court of Florida:*

The petition of Mary L. Moody and of Paran Moody, her husband, respectfully shows and suggests to your Honors:

That on the 31st day of May, 1883, your petitioners filed their bill in equity in the Circuit Court in and for Duval county, Florida, before the Hon. James M. Baker, the Judge of said Court, against the Jacksonville, Tampa and Key West Railroad Company, alleging that they had forcibly entered upon certain lands of your petitioners and without their leave or the authority of law, and against your petitioners' consent and wishes, were appropriating said lands or a portion of them to the buiding of a railroad and prayed an injunction against said defendant to restrain them from said acts of trespass. Upon said bill the said court granted the injunction prayed for. Afterwards the defendant filed an answer justifying their alleged trespass under and by virtue of an act of the Legislature of Florida, entitled " an act to provide a general law for the incorporation of railroads and canals," being chapter 1987, (No. 12,) of the acts passed in the year 1874, and which was approved February 19th, 1874, whereupon, the said court, after argument heard, dissolved the said injunction, and your petitioners appealed from the said order of dissolution to this court, which, at its last January term, pronounced its opinion in said cause and rendered its judgment and decree whereby it said that that portion of the said statute which authorizes the taking of private property for public use, and under which the said defendants

justified, is unconstitutional and void, and this court reversed the order of said Circuit Court, dissolving the injunction, and decreed that the said injunction be revived, to continue until the further order of the court, or until the corporation may be granted the right of compulsory purchase of the land of the plaintiffs, by the proper authority, and just compensation is made to him therefor upon its legal condemnation to the use of the company.

And the mandate of the court in said cause was filed in the said Circuit Court on the 5th day of June, 1874. Your petitioners now suggest to your Honors, that notwithstanding the judgment and decree of this court, and its opinion in said cause, involving the right of said railroad company to exercise by delegation the right of eminent domain, and which claim this court decided against said corporation's right, the said Circuit Court, the Hon. James M. Baker presiding, is about to give force and effect to so much of said act as provides for the right of compulsory purchase of plaintiff's land by said corporation; that said corporation has filed in the said Circuit Court its petition asking for the appointment by said Circuit Court of commissioners under said statute for the appraisal of your petitioner's land in order that they may be condemned, and the said Circuit Court has announced its intention to appoint them. A transcript of all the proceedings in the case, duly certified, accompanies this suggestion, by which your Honors will be informed of the truth of the facts here stated.

Your petitioners therefore pray that a writ of prohibition may be issued, prohibiting the said Circuit Court and the Judge thereof from appointing any commissioners under said act, for the purpose of appraising or condemning your petitioner's land for the use of said corporation, and from doing any other act under said statute to uphold or en-

force any alleged claim by said corporation that it has the right of compulsory purchase of your petitioner's land, and from in anywise violating the mandate of this court which has been issued in said cause. And that your Honors may make such other order in the premises as may be proper.

MARY L. MOODY and PARAN MOODY,
By E. M. L'Engle, their Attorney-at-Law.

The petition of the company which accompanies the suggestion, after stating its incorporation, and its contemplated line of road, and the construction of its road from Jacksonville to Palatka, recites that it has constructed its track upon and over certain lands being the separate property of Mrs. Mary L. Moody, wife of Paran Moody, giving a description of the lands, the line of the track in detail, and asserting possession. The petition recites further that it has attempted to acquire title to the land by appraisal to so much of said lands as is the track and road-bed, including a right of way one hundred feet along the line of location of its track, but that the title thereby attempted to be acquired is defective, and that it has not acquired title thereto; that the portion of said lands which the company seeks to acquire is a strip fifty feet wide on each side of the centre of its main track; that the company has in good faith constructed and finished a railway over the said lands, have made a survey and map thereof by which such route or line is designated, and has located its road according to such survey, and filed certificates of such location, signed by the engineer of the company, in the office of the Clerk of the Court for Duval, being the county in which such real estate is situated; that the land described in this petition is required for the purpose of constructing and operating the said railroad, and that the company has not acquired title thereto.

Petitioner then prays for the appointment of three qualified commissioners to appraise the compensation to be paid Mrs. Moody for so much of the real estate proposed to be taken by said company for its track and right of way as aforesaid ; that the court may fix the time for the first meeting of the commissioners ; that the court may authorize the road to continue in possession and use of such real estate, and that all actions or proceedings against said company on account thereof, or by reason of the use, occupation or possession of such real estate, pending the proceedings, on the company paying into court a sufficient sum, or giving security, as the court may direct, to pay the compensation therefor when finally ascertained, either of which your petitioner is ready and hereby offers to do, whenever and as the court might direct. Petitioner prays the court to at once direct and determine what sum shall be paid into court, or security given by your petitioner, and thereupon that an order be made enjoining and restraining the said Mary L. Moody and Paran Moody, her husband, from further prosecuting or bringing any and all actions or proceedings against your petitioner by reason and on account of the use, occupation and possession of the premises aforesaid pending and until the final determination of these proceedings. There was a prayer for alternative relief, and the petition was sworn to by an officer of the company.

It is made to appear that the court has required a cash payment of $5,000 to be paid into court to pay the compensation for the lands when ascertained. Upon the filing of this petition and exhibit in this court, a rule to show cause was awarded in language, as follows :

IN THE SUPREME COURT OF FLORIDA, ⎰
June Term, A. D. 1884. ⎱

THE STATE OF FLORIDA:

*To the Hon. James M. Baker, the Judge of the Circuit Court*
*of the Fourth Judicial Circuit of Florida, and the Jackson-*
*ville, Tampa and Key West Railroad Company:*

Mary L. Moody and Paran Moody having filed in this
court their suggestion, that notwithstanding the opinion of
this court heretofore, at its last January term pronounced,
and its mandate on the 21st day of last May, issued in the
cause wherein Mary L. Moody and Paran Moody were the
appellants and the Jacksonville, Tampa and Key West Rail-
road Company and others were the apellees, you, the said
James M. Baker, Judge, as aforesaid, are about to give
force and effect to so much of the act of the Legislature of
the State of Florida, approved February 19th, 1874, (being
chapter 1987, No. 12, of the said acts,) as provides for the
right of compulsory purchase of lands by railroad corpora-
tions, and that you are about to appoint commissioners un-
der said statute for the appraisal of said petitioners' lands,
in order that they may be condemned for the use of said
railroad company. And the said petitioners, praying that
the State's writ of prohibition may be granted in this be-
half to prohibit you, the said James M. Baker, Judge, as
aforesaid, from appointing any commissioners under said
act for the purpose of appraising or condemning the lands
of said petitioners for the use of said corporation, and
from doing any other act under said statute to uphold or
enforce any alleged claim by said corporation, that it has a
right of compulsory purchase of the petitioners' land, and
from in any wise violating the mandate of this court, which
has been issued as already stated. You, the said James M.
Baker, Judge, as aforesaid, and you, the said Jacksonville,
Tampa and Key West Railroad Company, are therefore

commanded that you show cause, on Thursday, the 10th day of July next, at ten o'clock, A. M., why the writ of prohibition should not issue as prayed for.

Witness, the Honorable Edwin M. Randall, Chief-Justice of the Supreme Court of the State of Florida, and the seal of said court, at Tallahassee, this 25th June, A. D. 1884.

[SEAL.]                       C. H. FOSTER,
                      Clerk Supreme Court of Florida.

The defendants demur to the suggestion in prohibition, and there was joinder in demurrer.

Several grounds of demurrer are here set up, but we think it necessary to examine but one. It is insisted by the defendants that the Circuit Court, under the statute, has full jurisdiction to have the appraisement made at the suit of the company, and that for this reason no prohibition will lie.

The contrary is maintained by the plaintiffs. They insist that the Circuit Court is exercising powers under a statute which is unconstitutional, that it is exceeding or attempting to exceed its powers. If the Circuit Court in lending its aid to have the appraisement and compensation sought under the allegations of the petition of the company is enforcing the company's constitutional rights, then a prohibition certainly will not lie.

The right here sought to be enforced is the exercise of the right of eminent domain, in a case where a railroad without having acquired title to land *have constructed upon it their track.* The proceeding under this state of facts is regulated by the twentieth section of its charter, (§20 chap. 1987, Laws of Fla.,) which provides as follows:

" In any case where a railroad or canal company shall not have acquired title to any land upon which they have constructed their track or canal, or if at any time after an attempt to acquire title by appraisal of damage or other-

wise, it shall be found the titles thereby attempted to be acquired is detective, the company may proceed anew to acquire or perfect such titles in the same manner as if no appraisal had been made, and at any stage of such new proceedings the court shall authorize the corporation, if in possession, to continue in possession; and if not in possession to take possession and use such real estate during the pending of such new proceedings, and may stay all actions or proceedings against such company on account thereof, on such company paying into court a sufficient sum, or giving security, as the court may direct, to pay the compensation therefor when finally ascertained. No injunction shall be granted until said compensation has been fixed and determined." And the compensation to be awarded under the statute embraces the value of such tract of.land proposed to be taken, with the improvement thereon, and each separate estate therein, and the damage sustained by the owner by reason of the taking thereof. It is to be noted that this compensation under the statute embraces not only the value of the land but also " the damage sustained by the owner," resulting from the use and possession during the pendency of the proceedings. Under some decisions this is deemed essential to the constitutionality of the act.   Davis vs. San Lorenzo R. R. Co., 47 Cal., 517.

This section of the act provides a means by which a company already in possession of land of a party by having constructed its track upon it, without acquiring a title to it from the owner, that is by an unlawful entry or trespass, may acquire title. The owner under this section of the act cannot have an injunction against the use and possession of the land until the compensation has been fixed and determined. After that compensation is fixed, the law contemplates that in the event of non-payment he may at once enjoin the continuation of the unlawful antecedent posses-

sion. During the pendency of these proceedings the temporary possession is protected in the company, and the final dominion and right of possession of the owner is not destroyed until there is an actual payment of the money which is to be realized from cash or security required to be antecedently deposited by the court. There can be no right to a continuation of the possession or right of property, whether it be a fee simple or an easement in the company, except upon payment of the compensation fixed by the commissioners.

So far as the matter of just compensation which the owner of the land is to receive upon the taking of his property is concerned, its payment to him is, we think, secured here within the meaning of the constitution. In the case of Moody & Wife vs. The Jacksonville, Tampa and Key West Railroad Company, decided at the last term, we held that a judgment against a corporation, with the right to have execution thereof, was not a just compensation to the land owner for the taking of his land for construction of the road and its appropriation to its use. We held also that in the absence of legislation securing just compensation a court of equity could not authorize the condemnation by securing it to the company; that this was a legislative function, and that a court of equity was powerless to sanction such a trespass for the reason that the right of the owner to just compensation must be the result of legislative action. We did not say, either there or elsewhere, nor can or do we say now, that where there had been an unlawful entry and appropriation the *Legislature* could not authorize a condemnation and change of ownership, by protecting and enforcing the constitutional right of just compensation to the owner before his dominion and right of property was taken away. That is this case. So far as the matter of the sections of this law, which regulate the proceedings

for appraisal by commissioners, are concerned there may be constitutional objections to portions of them, but there is in these sections sufficient to authorize and prescribe a constitutional method of proceeding, complete in itself: that these unconstitutional portions of the sections may be stricken out, or simply disregarded, in the proceeding, and the constitutional provisions followed, under such circumstances, cannot be questioned. Such is the doctrine announced in this court on several occasions, and it is fully sanctioned by the cases. Therefore, if the authority of the court to require security for the compensation, as authorized in this proceeding, is unconstitutional, there still remains the duty to make a cash deposit sufficient to meet the compensation to be ascertained, and the party has the right to enjoin the use of the land until he is paid after the damage is ascertained.

Our attention has been called to the principles announced in the case of Moody & Wife vs. The Jacksonville, Tampa and Key West Railroad Co., decided at last term. This was a suit in equity. The present case is one in prohibition, under entirely different circumstances. It seeks to prohibit the court from exercising a jurisdiction which it plainly possesses under a constitutional statute. That decision was to the effect that section seventeen of the charter of this company was void, being beyond the power of the Legislature, and that such portion of the act regulating the proceeding to appraise by commissioners as authorized the company to enter upon, take possession of and proceed with the construction of its road, even before filing a petition for the appointment of commissioners, was void. We there said as to section twenty of the act, the one now under consideration, that " other provisions of the act regulating proceedings to acquire titles under circumstances not existing in this case, and which do not apply to it, are called

to our attention, but as they do not control this proceeding, or upon their face or according to their plain letter and intent, purport in any manner to affect the present case, it is only necessary to mention their character. These sections prescribe a method of proceeding where the company shall not have acquired title to land upon which ' they have constructed their track, or if, after attempt to acquire title, the title' attempted to be acquired is defective, or the title is in the trustee of an infant or idiot without power of sale." We plainly say that proceedings under these sections are unlike those under the sections under which the company was then proceeding. The Judge of the Circuit Court, in his opinion upon this subject, which we have read with interest, correctly construes the opinion rendered in the former case in the matter of its limitations. In addition to the above general limitations, we are continually asserting in that opinion that we do not go beyond the exact case before us. Indeed, had we attempted to define the rights of either of the parties in a case where the company had "constructed their track," what we might have said would have been simply *obiter* to which even the doctrine of *stare decisis* would have been inapplicable. It would not have been entitled to the standing of a precedent even. Certainly the rights of parties could not be thus determined.

What is the rule of the cases upon this subject? In the first place what is this case? It is the illegal laying of a track by a railroad company, preceded by an unlawful and unauthorized entry—a trespass.

In the case of Secombe vs. The Railroad Company, 23 Wall., 118, the Supreme Court of the United States, in stating its views of the power of the Legislature, in the matter of the mode of exercising the right of eminent domain, says: " There is no limitation upon the power of the

Legislature in this respect if the purpose be a public one and just compensation be paid or tendered to the owner for the property taken.   It hardly need be said that the taking of private property in order that a railroad may be constructed is a public necessity. It is urged that the property in controversy was occupied before the proceedings in condemnation were begun, but there is nothing in the findings of fact to show that this was so.   Even if the plaintiff were in a situation to make the objection it would not avail him, for prior occupation without authority of law would not preclude the company from taking subsequent measures authorized by law to condemn the land for their use. If the company occupied the land before condemnation without the consent of the owner, and without any law authorizing it, they are liable in trespass to the persons who owned the land at the time, but not to the present plaintiff."

In the case of Justice vs. Nesquihoning Valley Railroad Co., 87 Penn. State, 32, Chief-Justice Agnew delivering the opinion of the court, says: " This is not the case of a mere trespass by one having no authority to enter, but of one representing the State herself, clothed with the power of eminent domain, having a right to enter and to place these materials on the land taken for a public use, materials essential to the very purpose which the State has declared in the grant of the charter.   It is true the entry was a trespass by reason of the omission to do an act required for the security of the citizen, to wit: to make compensation or give security for it.   For this injury the citizen is entitled to redress.   But his redress cannot extend beyond his injury.   It cannot extend to taking the chattels of the railroad company.   *   *   *   In the case of a common trespasser, the owner of the land may take and keep his structures *nolens volens*, but not so in this case, for though the original entry was a trespass, *it is well settled*

*that the company can proceed in due course of law to appropriate the land* and consequently to reclaim and avail itself of the structures laid thereon." The court, speaking of the original illegal entry, says: For it " the owner has his appropriate remedies; his action of ejectment to recover and retain his land and its use until the company shall proceed according to law and his action of trespass to recover damages for the injury sustained by the unlawful entry and holding possession, and whatever loss has been incurred by his illegal acts." And in Harvey vs. Thomas, 10 Watts, 63, it was held that the subsequent proceeding to assess compensation was a protection against a recovery of vindictive damages.

The Supreme Court of Alabama, speaking through Brickell, Chief-Justice, in the case of Jones vs. N. O. & S. R. R. Co. and Im. Asso., 70 Ala., 232, says: " The duty rested upon the appellee," that is the company, " before the taking and appropriation of the lands to have caused in the appointed mode an ascertainment of the compensation to which the owner was entitled and to have made payment of the compensation. Neglecting this duty the entry upon and possession of the lands was wrongful. No title to them was acquired and the title of the owner was not divested. The neglect of the duty, the wrongful entry and possession, does not preclude the appellees," that is the company, " from resorting subsequently to the appropriate proceedings for the acquisition of the lands and, of consequence, availing itself of all the structures it may have placed thereon."

This court sustains clearly the proposition that the company, notwithstanding the original unlawful entry, does not stand in the relation of a common trespasser, and has the right to subsequent legal condemnation.

It is certainly unnecessary to repeat page after page of

precedent upon this subject. They sustain the conclusion that while the original entry may have been tortious, yet if the Legislature has, with the power to peremptorily purchase, imposed the corresponding duty of making just compensation, the subsequent condemnation is legal.

With a few comments on the cases upon this subject cited by the plaintiffs, we leave this branch of the case. In the State of Wisconsin, our attention has been called to the following cases: Bohlman vs. G. B. & L. P. Railway Co., 30 Wis., 105; Burns vs. W. & M. R. R. Company, 9 Wisconsin, 450; McAulay vs. W. V. R. R. Co., 33 Vermont, 311; and to chapter 175, General Laws of that State, April 6th, 1861. The first case was an action for an injunction to restrain a company from appropriating plaintiffs' land in the construction of a railway track where the company had not taken any measures looking to compensation of plaintiffs. It was not a case where the track had been constructed, nor was it based upon a statute like the statute of Florida. It was based upon a clause of an act (sec. 2) which gave a right to the owner of the land over which the company had constructed its road without making compensation, and the decision was that in a case where he had not consented to the unlawful entry he was entitled to an injunction restraining any entry by mules and teams for the purpose of preparing the road bed, as well as to damages. It is true that Mr. Chief-Justice Ryan, in speaking of the entire act, says that it was intended only to apply to cases where the railroad company has entered upon and has actually built and put its road in operation over the land by the permission, tacit or express, of the owner. The effect of the decision was to say that where there was an assent to the entry the owner's right to an injunction until his compensation was ascertained did not exist under the statute, but that where there was a for-

cible entry his right to such injunction did exist outside of the statute; and the court holds that if the statute denied this right to an injunction after a forcible entry to prevent the use or occupancy of the land by the railroad until the amount of damage to which any owner might be entitled should have been liquidated, it would have been unconstitutional. I do not understand the statute of Florida to deny to the owner of the land his right to enjoin such use following a forcible entry until he has been compensated, or his compensation by cash deposit secured. If the company here had entered into possession of this land forcibly, and propose to retain it without compensation, the owner is nowhere denied the right to an injunction " to prevent the use of the land " for such purpose until his damages shall be paid him or secured to him in cash when ascertained. What the owner here apparently wishes is to prevent any legal ascertainment of the damages under the statute entirely, to dispossess the road permanently by preventing the company's compliance with the law, which authorizes it when it shall have constructed its track to ascertain the compensation due, and which requires it to make just compensation before it can have permanent use of the land for the public purpose for which it was created. Here this court is asked to prevent the company from exercising its right of compulsory purchase through the Circuit Court after it has instituted its proceeding looking to appraisal and after it has deposited its money in the court under the provisions of a law, constitutional to that extent at any rate.

The case of Andrews vs. The Farmer's Loan and Trust Company, 22 Wis., 288, decided that the act considered in 30 Wis., 195, in so far as it restrains the right to injunction above stated, is constitutional.

The case of Burns vs. W. & M. Railroad Co., 9 Wis., 450, has no application to the matter of the construction of

this statute. The question was whether certain lands taken were necessary for the purposes of its charter. What these decisions mean is explained in subsequent cases in Wisconsin construing these statutes. See especially the case of Sherman vs. The Milwaukee, Lake Shore and Western Railroad Company, 41 Wis., 651. See this case also for a discussion of the extent of the liability of a railway company trespasser, having the right of eminent domain, in ejectment or trespass. We cannot see what aid the cases cited from 33 Vermont, 311; 3 Stockton, 106, and 7 N. H., 70, can give us in the construction of our statute.

After writing the preceding portion of this opinion, we have received an additional brief of the plaintiffs and we will examine the points made to the extent that reach the question of jurisdiction.

A construction of that portion of the section of the act providing for a stay of actions pending against the company and denying a right of injunction until compensation has been fixed, is deemed necessary. The only remedy which the owner had in equity as to the wrongful possession is an injunction affecting the possession. This the statute suspends until the compensation to which he is entitled is ascertained and then it is revived. The other class of actions stayed are actions at law concerning the possession. I do not understand that any action at law, growing out of the wrongful entry, sounding in damages is stayed by this action, or that any other legal remedy which he may have is stayed unless it affects the present temporary possession without title. That, the Legislature secures to the company in order that it may discharge its duties to the public, and at the same time it secures just compensation to the owner. This question of power is discussed in the case of Andrews vs. The Farmer's Loan and Trust Company, 22

Wis., 295, where the suspension of the equitable right to an injunction is sustained as constitutional, and if this be so a stay of legal remedies affecting the possession is constitutional also. This stay of proceedings relates to actions accruing and instituted after the passage of the act, and it is within the power of the Legislature to prescribe reasonable rules for the stay of actions in cases of this character. Objection is made on the ground that the court is given the authority to fix the cash sum to be paid into court to meet the compensation to be awarded, and because the right to institute the proceedings to appraise is restricted to the company. These objections concern the method of exercising the right of eminent domain under the constitution, as to which, as remarked by the Supreme Court of the United States: "It is no longer an open question in this country that the mode of exercising the right of eminent domain in the absence of any provision in the organic law prescribing a contrary course is within the discretion of the Legislature."

The court here has authority to hear witnesses, to determine the amount of the deposit by virtue of its general power, to determine what is a sufficient sum and it is a very proper authority to exercise the power. The constitution nowhere provides that the owner shall have the right to institute a special proceeding to ascertain his damage. He is left to his ordinary legal and equitable remedies as they exist. The limitations of the constitution concern the legislative power to take private property and the only limitation is that it shall be taken for a public use and with just compensation to the owner. Any method which secures that to him is constitutional. It is not necessary that his rights of action should be increased.

We think we have considered all the questions which arise in determining whether the Circuit Court is not ex-

ercising a power within its constitutional jurisdiction. Our conclusion is that it is acting within its powers, and the necessary result is that a writ of prohibition must be denied.

The judgment is that the rule is discharged, and the writ denied, the costs to be paid by the relator, Paran Moody.