MOSES E. LEVY AND OTHERS, APPELLANTS, v. JOEL B. SMITH, TAX ASSESSOR AND COLLECTOR.

The act of 1845, which provides that all land in this State *subject* to taxation, shall be classed into three classes or grades, exempts only land belonging to the United States, to public schools, and charitable and religious institutions.

Every description and quality of land in the State subject to taxation must, necessarily, fall within some one of the grades established by law, and it is for the owner to discriminate and assign his land to the class to which, according to its quality, it belongs.

The classification made by the Legislature of land subject to taxation, does not contravene that article of the Constitution (Article 8, Section 1,) which requires "the General Assembly to devise and adopt a system of revenue, having regard to an equal and uniform mode of taxation, to be general throughout the State."

This case was brought up by appeal from a decree of the Hon. THOMAS DOUGLAS, Judge of the Eastern Circuit. A similar decree was made by the Judge in the Court below, in the cases of Benjamin A. Putnam and Henry G. Marquand against Joel B. Smith, tax assessor, from which, also, appeals were taken by the complainants, and questions involving the same principles brought up for the decision of this Court. The facts presented by the records in these cases, and the nature of the decree appealed from, are sufficiently stated in the opinion pronounced by the Court, affirming the decree of the Judge of the Circuit Court.

*Fairbanks* & *Forward,* for Appellants.

*Hogue, A. G.,* for Appellee.

SEMMES, *Justice,* delivered the opinion of the Court.

The principal facts presented by the record in this case are these : In the year 1848, the tax assessor for the County of Alachua assessed for that year the State tax on certain lands belonging to appellants, known as the Arredondo grant ; and on the appellants refusing to pay this assessment, the tax collector advertised the lands for sale. On the third of May, 1849, the appellants filed their bill in Chancery against the respondent, praying for an injunction, and alleging, among other things, that a large portion of said lands was not embraced within either of the classes designated by the revenue laws of the State, and consequently was not subject to taxation under their provisions.

According to the proofs, it appears that the said grant contains two hundred and sixty-two thousand six hundred

and forty-six acres ; that thirty-four thousand acres of this tract is permanently covered with water, and that about one hundred thousand acres, over and above that covered with water, is unfit for agricultural purposes. The Court below sustained the bill, so far as to decree that the thirty-four thousand acres were not subject to taxation, but dismissed it as to all other matters ; and from the decree, this appeal is taken.

The counsel for appellants contend—first, that the lands contained in this grant are exempt from taxation under the revenue laws of the State ; and, secondly, that these revenue laws are unconstitutional.

The Court has had no difficulty in considering these points, and it feels no hesitancy in saying that neither can be sustained.

The second section of the revenue law passed in 1845, and which is now in force, provides that " all the land in this State *subject* to taxation, shall be classed into three classes, or grades, viz: first, second and third rates," and upon lands falling within each of these grades, there is assessed a specific tax. Thompson, 87. By section fifth, (Ibid, 91,) it is made the duty of the owners of land to return to the assessors a particular description of the situation and quality of the same, and to which class it belongs.

It is said the provision of the act implies that there are lands in the State which are not subject to taxation, and that it is to be inferred that the Legislature designed to exempt pine and other lands unfit for agricultural purposes ; otherwise, they would be put on the same equality with arable lands. The answer to this is obvious. The lands referred to in the statute, as being exempt from taxation, are those belonging to the United States, to public schools, and charitable and religious institutions. Thompson, 87. In order to establish an uniform system of taxation, the Legislature has seen proper to divide all other

lands in the State into three classes, and every description and quality of land must, of necessity, be embraced in one or the other of these grades.

It is not true that the effect of this revenue law is to place good arable lands on an equality with pine and other lands of inferior quality. They belong to different classes—there is a difference in the tax imposed, and the law has authorized the owners to discriminate, and assign to the proper class the respective qualities. It is in proof that these appellants exercised this power, and returned to the respondent the respective portions of the lands contained in this grant, as first, second and third qualities ; and we do not understand why this classification, made by themselves of their own lands, should now be complained of as unjust or oppressive. It would be a most arbitrary construction of the revenue law to exclude from its provisions any land liable taxation, however poor or inferior its quality. Such an interpretation would be against the manifest intention of the Legislature, and defeat the obvious end and purpose of the statute.

But it is said the Constitution of the State authorizes the " General Assembly to adopt a system of revenue, having regard to an equal and uniform mode of taxation, to be general throughout the State ;" and that the system adopted by the Legislature is not equal and uniform, for the reason that some lands embraced within the third class are of inferior quality to others. This may be true, and the same may be said of lands embraced within the other classes ; but this is no reason for believing that the system is not one of equal and uniform character *throughout the State.* Some slight inequality in the value of lands included in the same class doubtless does exist ; but it is not confined to one section, but prevails throughout the whole State ; so that lands belonging to one person, and coming within any of the three classifications are subject to the same specific tax as all

other lands of a like character. The tax is *equal*, because it is in just proportions ; it is uniform, because it conforms to the same rule. It is a specific, and not an *ad valorem* tax ; and if it is not the most equitable and just, it is for the Legislature and not the Courts to correct the evil. The system may not be free from defects. If it is not the best and only mode by which equality in taxation can be secured still it cannot be expected that the Legislature could devise any mode whereby taxation could be so apportioned in every particular, as to operate with precise uniformity upon every individual.

The Court is, therefore, of opinion that the revenue law of 1845, classing all lands in this State subject to taxation into three grades, and imposing a specific tax upon the same, is equal and uniform throughout the State, and that the law is constitutional.

Let the decree of the Court below be affirmed.