ED HAYES, *Plaintiff in Error*, v. GEORGE WALKER, CHIEF OF POLICE OF THE CITY OF TAMPA, *Defendant in Error.*

1. Where provisions contained in an act violate some requirement of the organic law, or are not a part of, or properly connected with, the subject expressed in the title of the act, and such part so unconstitutional or so illegally embraced in the act can be eliminated or disregarded without destroying the effectiveness of the act for the purpose intended, the illegal part should be so eliminated or disregarded, and the valid portion held to be operative; but if the illegal part be of such import that the other portions of the statute, without it, would cause results not contemplated or desired by the legislature, then the effectiveness of the act for the purpose intended is impaired, and the entire statute must be held to be inoperative.

2. The title of Chapter 5857, acts of 1907, entitled "An Act to Extend the Corporate Limits of the City of Tampa," clearly expresses one general subject, and a provision in said act that the added territory shall not be liable for nor taxed to pay any existing bonded indebtedness of the city of Tampa is germane to and properly connected with the subject expressed in the title. Only the subject and not matter properly connected therewith is required by the constitution to be expressed in the title of the act.

3. The constitutional provisions requiring a uniform and equal rate of taxation, and a just valuation of all property, and that incorporated cities or towns shall impose taxes for municipal purposes and for no other purposes, and that all property shall be taxed for municipal purposes upon the principles established for State taxation, do not prohibit the legislature from making proper and reasonable classifications of property for purposes of municipal taxation, so long as such classifications are not arbitrary, unreasonable and unjustly discriminating, and apply similarly to all under like conditions and do not violate any other provision of the organic law. Hocker and Parkhill, JJ., not concurring.

4. Classifications for purposes of legislation may be made with reference to similarity of situation, circumstances, require-

ments and convenience to best subserve the public interest. The test as to the validity of classifications for purposes of legislation is good faith, not wisdom. Hocker and Parkhill, JJ., not concurring.

5. The statutory provision contained in Chapter 5857 acts of 1907, that certain described property annexed to an existing municipality shall not be liable for nor taxed to pay any existing bonded indebtedness of the city cannot be said to be an unreasonable, unjustly discriminating or arbitrary classification of property for taxation purposes, and in view of the presented facts the classification appears to be founded upon equitable principles within the bounds of the wide discretion that should be accorded to the legislature in the interest of the public welfare. Hocker and Parkhill, JJ., not concurring.

This case was decided by Division A.

Writ of Error to the Circuit Court for Hillsborough County.

The facts in the case are stated in the opinion of the court.

*Sparkman and Carter* and *J. P. Wall,* for plaintiff in error;

*E. R. Gunby* and *Glen & Himes,* for defendant in error.

WHITFIELD, J.—This writ of error was taken to a judgment of the circuit court for Hillsborough county sustaining a demurrer to the petition and remanding the petitioner in a habeas corpus proceeding. The errors assigned are: (1) remanding the petitioner; (2) sustaining the demurrer to the petition; (3) quashing the writ of habeas corpus; (4) sustaining the constitutionality of Chapters 5857 and 5859 and Laws of Florida, approved May 17, 1907.

All questions as to whether or not the matters here presented can properly be determined in this proceeding have been expressly waived, and the court will consider as properly presented all points shown by the record to be material to the right of the plaintiff in error to be discharged from custody by habeas corpus.

The contention briefly stated is that the plaintiff in error is illegally deprived of his liberty by the chief of police of the city of Tampa, Fla., under a commitment from the municipal court of the city of Tampa, for the alleged reason that the offense for which he was sentenced to custody was not committed within the territory of the city of Tampa and consequently the judgment and commitment of the municipal court of the city of Tampa under which the plaintiff in error is deprived of his liberty are illegal and do not authorize the detention of the plaintiff in error in the custody of the chief of police of the city of Tampa. The territory within which the offense was committed was placed within the corporate limits and authority of the city of Tampa by two statutes, Chapters 5857 and 5859, Laws of Florida, both of which were approved and became effective on May 17th, 1907.

It is contended that these statutes in so far as they purport to place within the corporate limits of the city of Tampa the territory within which the offense in this case is charged to have been committed, are unconstitutional, null and void because (1) each of said statutes violates section 16 of Article III. of the constitution which provides that each law enacted in the legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title; (2) each of said statutes violates sections 1 and 5 of Article IX. of the constitution which provide for equal and uniform taxation; and, (3) each of the said statutes undertakes by way of compensation for the annexation of the territory mentioned to the city of

Tampa, to relieve all of the real and personal property embraced within said territory so attempted to be taken in, from liability or taxation for the then existing bonded indebtedness of the city of Tampa.

The petition upon which the writ of habeas corpus was issued alleges that at and prior to the passage of the statutes above referred to the bonded indebtedness of the city of Tampa amounted to $1,010,500.00 for outstanding bonds; "that a large part of the money arising from the sale of said bonds was used in the erection of a city hall and public offices of the city of Tampa, for the purchase of sites and erection of stations for the fire department of the city of Tampa, for the erection of a bridge across the Hillsborough river connecting that portion of the city on each side of the bridge; in the purchase of a public park for the city of Tampa, in the erection and construction of a main sewer line running through the city of Tampa east and west and north and south; and that in the purchase, construction, erection and building and acquirement of the aforesaid properties none of the expenses thereof were used or charged to any particular portion of the city of Tampa or to the abutting property of the citizens of the city of Tampa."

The constitution of Florida does not enumerate the powers of the legislature, but it contains limitations upon the legislature in enacting laws in certain particulars, and unless statutes duly enacted clearly violate some express or implied prohibition or limitation contained in the constitution, the courts have no power to pronounce them invalid.    Thomas v. Williamson, 51 Fla. 332, 40 South. Rep. 831; State ex rel. Attorney General v. Bryan, 50 Fla. 293, 39 South. Rep. 929; Edgerton v. Mayor etc., of Green Cove Springs, 19 Fla. 140, text 145.

A liberal rule of construction should be applied when the constitutionality of a statute duly enacted is questioned and every reasonable doubt should be resolved in

favor of the validity of the statute assailed.    The court should, in deference to the legislative department of the government, uphold a statute alleged to be unconstitutional, unless it is clearly made to appear beyond a reasonable doubt that the statute is unconstitutional.    Campbell v. Skinner Mfg. Co., 53 Fla. 632, 43 South. Rep. 874; State *ex rel.* Turner v. Hocker, 36 Fla. 358, 18 South. Rep. 767; Schiller v. State, 49 Fla. 25, 38 South. Rep. 706.

The provision of the constitution that "each law enacted in the legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title," is mandatory, and is as binding upon the legislature and the courts as any other provision in the constitution.    It is the duty of the courts to declare legislative enactments inoperative when the question is properly presented and the enactment is clearly violative of the requirements of the constitution. If a statute clearly violates the constitutional requirement that each law shall embrace but one subject and matter properly connected therewith, and that such subject shall be briefly expressed in the title, it is the duty of the courts to declare the statute inoperative; but all doubts should be resolved in favor of the legislative enactment.    See Holton v. State, 28 Fla. 303, 9 South. Rep. 716; Board of Commissioners of Escambia County v. Board of Pilot Commissioners of Port of Pensacola, 52 Fla. 197, 42 South. Rep. 697; Potter v. Lainhart, 44 Fla. 647, 33 South. Rep. 251.

If the body of the act contains only provisions that are a part of or that are properly connected with the subject as expressed in the title of the act, the constitutional provision is satisfied.    Only the subject, and not matters connected therewith, are required to be expressed in the title.    The subject may be briefly expressed in the title, or it may be gathered from the matters stated in the title,

if all of them relate to one general subject. The title should contain only one subject but it may contain many different parts of one general subject or matters properly connected therewith.

A portion of an act may be constitutional and a portion of it unconstitutional. If a portion only of an act is unconstitutional, and such portion cannot be eliminated or disregarded without destroying the effectiveness of the act for the purposes intended; or, if it cannot be said, from a consideration of the entire act, that the legislature would not have passed the one without the other; or, if the unconstitutional portion is of such import that the other portions, without it would cause results not contemplated or desired by the legislature in enacting the law, then the entire statute must be held to be inoperative. State v. Patterson, 50 Fla. 127, 39 South. Rep. 398; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. Rep. 431; I Lewis' Southerland Statutory Construction (2nd ed.) §297.

Where provisions contained in an act violate some requirement of the organic law, or are not a part of or properly connected with the subject expressed in the title of the act, and such part so unconstitutional or so illegally embraced in the act can be eliminated or disregarded without destroying the effectiveness of the act for the purpose intended, the illegal part should be so eliminated or disregarded, and the valid portion held to be operative; but if the illegal part be of such import that the other portions of the statute, without it, would cause results not contemplated or desired by the legislature, then the effectiveness of the act for the purpose intended is impaired, and the entire statute must be held to be inoperative. 1 Lewis' Sutherland Statutory Construction (2nd ed.), §297; Ex parte Knight, 52 Fla. 144. 41 South. Rep. 786.

. If a portion of a statute is unconstitutional and such

portion can be eliminated or disregarded without impairing the effectiveness of the remaining portions of the statute for the purposes intended, and without causing results not contemplated or desired by the legislature, and it does not appear from a consideration of the entire act and the purposes for which it was enacted, that the legislative authority would not have enacted the valid portions without the invalid portion, effect will be given to so much of the act as is constitutional and can be made effective for the purpose intended by the enactment. Where a portion of a statute is unconstitutional, but the remaining portion is constitutional, and is not dependent upon the unconstitutional portion for effectiveness, and the constitutional portion is sufficient of itself to accomplish the purpose of the enactment, the unconstitutional portion may be disregarded or eliminated and effect given to the remainder of the statute. See State *ex rel.* Moody v. Jacksonville, T. & K. W. Ry. Co., 20 Fla. 616; Wooten v. State, 24 Fla. 335, 5 South. Rep. 39; English v. State, 31 Fla. 340, 12 South. Rep. 689; State *ex rel.* Attorney General v. Dillon, 32 Fla. 545, 14 South. Rep. 383; Ex parte Pitts, 35 Fla. 149, 17 South. Rep. 76; Florida East Coast Ry. Co. v. Hazel, 43 Fla. 263, 31 South. Rep. 272; Lewis' Sutherland Statutory Construction, §297; City of Tampa v. Solomonson, 35 Fla. 446, 17 South. Rep. 581.

One of the statutes mentioned, Chapter 5857, approved May 17 1907, is entitled "An act to extend the corporate limits of the city of Tampa." The first section of this act provides "That the corporate limits of the city of Tampa be and the same are hereby extended so as to include the following adjacent territory, not now included within the corporate limits of the city of Tampa, to-wit: (then follows a description of the territory which includes that involved here.) The second section provides that: "All public

property, rights and franchises theretofore belonging to the territory described in the preceding section as a part of Fort Brooke, shall hereafter belong to the city of Tampa, which shall also assume and be liable for all of the debts and obligations of the said town of Fort Brooke, provided, however, that the real estate or other property within the territory above described shall not be liable for nor taxed to pay any existing bonded indebtedness of the city of Tampa."

If the subject expressed in the title of this act does not embrace the proviso contained in the second section of the act or if the proviso in the second section violates the taxation sections of the constitution, and is consequently inoperative, and the first section cannot stand alone to accomplish the purpose designed by the legislature, the whole act must be held to be inoperative to place the territory in which the alleged offense was committed within the limits and jurisdiction of the city of Tampa, and the plaintiff in error would be entitled to be discharged from custody under the judgment and commitment of the municipal court of the city of Tampa.

The title of this act clearly expresses the subject of the first section, *viz*: the extension of the corporate limits of the city of Tampa. In view of the extensive powers of the legislature over municipalities under the constitution of this state, it cannot be said that the provisions contained in the second section of the act are not properly connected with the subject expressed in the title of the act. These provisions all relate to the rights and powers of the city of Tampa in and over the added territory and property rights therein, and are germane to and properly connected with the subject of placing the territory within the limits and jurisdiction of the city of Tampa.

It is insisted that the proviso contained in the second

section of the act that the territory and property placed within the limits and jurisdiction of the city of Tampa by the first section of the act shall not be liable for nor taxed to pay any existing bonded indebtedness of the city of Tampa, violates sections 1 and 5 of Article IX. of the constitution. These sections provide as follows:

"Section 1. The legislature shall provide for a uniform and equal rate of taxation, and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes."

"Section 5. The legislature shall authorize the several counties and incorporated cities or towns in the state to assess and impose taxes for county and municipal purposes and for no other purposes, and all property shall be taxed upon the principles established for state taxation. But the cities and incorporated towns shall make their own assessments for municipal purposes upon the property within their limits."

If this contention is well founded, and the proviso contained in the second section of the act is unconstitutional for the reason stated, it is clearly of such import that the provisions of section one of the act, without the proviso of section two, would cause results not contemplated or desired by the legislature, and the entire act must be held inoperative.

By the proviso in the second section of the act the legislature has expressly provided that certain conditions shall attach to the incorporation of the territory and property mentioned in the first section within the limits and jurisdiction of the city of Tampa. If the proviso in the second section is inoperative because unconstitutional, and the first section is held to be operative, it would cause an unconditional annexation of the territory,

when the legislature has plainly expressed its purpose to attach stated conditions to the annexation.

The constitutional provisions quoted above, that require the legislature to provide for a uniform and equal rate of taxation and a just valuation of all property, and require that the legislature shall authorize incorporated cities or towns to assess and impose taxes for municipal purposes and for no other purposes, and that all property shall be taxed for municipal purposes upon the principles established for state taxation, do not prohibit the legislature from making proper and reasonable classifications of property for purposes of municipal taxation, so long as such classifications are not arbitrary, unreasonable and unjustly discriminating, and apply similarly to all under like conditions and do not deprive persons of property without just compensation or without due process of law or do not deny to any person the equal protection of the laws or do not violate any other provision of the organic law. See 27 Am. & Eng. Ency. Law (2nd ed.) 601; Levy v. Smith, 4 Fla. 154; Edgerton v. Mayor etc. Green Cove Springs, 19 Fla. 140. See, also, Bloxham v. Florida, Cent. & P. R. Co., 35 Fla. 625, text 734, 17 South. Rep. 902; Florida Cent. & P. R. Co. v. Reynolds, 183 U. S. 471, 22 Sup. Ct. Rep. 176.

Classifications for purposes of legislation may be made with reference to similarity of situation, circumstances, requirements and convenience to best subserve the public interest. The test as to the validity of classifications for purposes of legislation is good faith, not wisdom. 7 Cyc. 185.

Under section 8 of the constitution of Florida, "the legislature shall have power to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time. When any municipality

shall be abolished, provision shall be made for the protection of its creditors." This provision secures to the legislature broad and comprehensive authority over municipalities and over their jurisdiction and powers.

The provisions contained in the second section of Chapter 5857, Laws of Florida, approved May 17, 1907, make a classification of the property incorporated by section one of the act into the city of Tampa and it cannot be said that such classification is on its face unreasonable, unjustly discriminating or arbitrary, or that it does not apply similarly to all under like conditions, or that such classification violates any organic law. The reasons for such a classification as are indicated from a consideration of the act and of the facts as to the indebtedness of the city of Tampa stated in the petition and admitted by the demurrer, appear to be founded upon equitable principles, within the bounds of which the legislature should be accorded a wide discretion in the interest of the public welfare.

A careful consideration of the provisions of the second section of Chapter 5857, Acts of 1907, does not lead to a positive conclusion that the section is obnoxious to the taxation sections of the constitution. If they do not appear beyond reasonable doubt to be unconstitutional, they should, in deference to the legislative department of the government, be held to be operative and they are held to be operative.

The other statute, Chapter 5859, is entitled "An act to amend section two * * * of Chapter 5363 of the Laws of Florida approved June 8th, A. D. 1903, entitled 'an act to amend Chapter 4883 of the laws of Florida, approved May 29th, 1889, being the city charter of the city of Tampa, and providing for its government, jurisdiction, powers and duties, and relating to the same, and to confirm and continue grants, and to make valid and binding upon the city of Tampa grants made by

the county commissioners of Hillsborough county and the town of Fort Brooke, as to territory described in this act and as to territory that may hereafter be acquired by the city of Tampa, and to abolish the municipal government of the town of Fort Brooke and to define the corporate limits of the city of Tampa."

Section 2 of Chapter 5363 Acts of 1903, fixes the corporate limits of the city of Tampa. Section one of Chapter 5859 Acts of 1907, amends section 2 of Chapter 5363 by abolishing the municipal government of the town of Fort Brooke and by placing within the territorial limits of the city of Tampa the territory involved here. The section also contains the following: "All public property, rights and franchises belonging to the territory described above and which has heretofore been a part of the town of Fort Brooke shall hereafter belong to the city of Tampa, which city shall also assume and be liable for all of the debts and obligations of the town of Fort Brooke, provided, however, that the real estate or other property within the territory above described which has heretofore been a part of the town of Fort Brooke, shall not to be liable for nor taxed to pay any existing bonded indebtedness of the city of Tampa."

As Chapter 5857 places the territory where the offense is alleged to have been committed within the limits of the city of Tampa thereby displacing any other municipal authority it may not be necessary to consider Chapter 5859 on the same subject. But the principles above announced apply as well in the construction of one as of the other.

The title of Chapter 5859, given above, does not appear to be double, but apparently expresses somewhat in detail one general subject relating to the municipal government, jurisdiction and powers of the city of Tampa. The provision of the act abolishing the municipality of the town of Fort Brooke, if essential, is

covered by the title of the act, and is properly connected with the subject of the act at least to the extent of the territory placed within the city of Tampa. State *ex rel.* McQuaid v. Commissioners of Duval County, 23 Fla. 483, 3 South. Rep. 193. It must be presumed the legislature properly discharges its constitutional duty to make provision for the protection of creditors of municipalities when they are abolished.

Even if Chapter 5859 be not considered, the provision of Chapter 5857, placing the territory upon which the offense is alleged to have been committed within the corporate limits and jurisdiction of the city of Tampa is not unconstitutional on the grounds assigned, and is effectual for the purpose intended, consequently the plaintiff in error is not entitled to be discharged from custody on habeas corpus as here presented. The judgment of the circuit court should, therefore, be affirmed, and it is so ordered.

SHACKLEFORD, C. J., and COCKRELL, J., concur. concur.

TAYLOR, J., concurs in the opinion.

HOCKER and PARKHILL, JJ., concur in the conclusion.

---

HOCKER, J., *Concurring.*—I agree with Justice WHITFIELD in his conclusion that Chapters 5857 and 5859 Laws approved May, 17, 1907, are not unconstitutional by reason of their titles, or because of the provision which relieves the territory of Fort Brooks, incorporated into Tampa, from taxation on account of the bonded indebtedness of Tampa, which existed when these

acts were passed. As to the last provision however, I am not satisfied that this result is to be reached by treating the exemption of the property in Fort Brooke, as a classification of property. It seems to me that this provision is sustained upon another principle, viz: that in annexing the territory in Fort Brooke to the city of Tampa, it was competent for the legislature to leave the existing indebtedness of Tampa as it found it. The acts referred to are prospective in their operation and no provision of our constitution is violated in making them so. The legislature could not impair the existing contracts or obligations of the city of Tampa and was under no constitutional obligation to saddle upon Fort Brooke any part of Tampa's existing debt. Our constitutional provision requiring a uniform and equal rate of taxation, has reference to taxation levied to pay future obligations, and not past ones, and this provision is not applicable to the facts of this case. U. S. v. Memphis, 97 U. S. 284. Moreover, the arrangement made by the legislature, seems to be in accordance with equity and justice. Demattos v. The City of New Whatcom, 4 Wash. 127. The provision we are considering is clearly distinguished from cases in which legislatures have extended city limits so as to take in unplatted and unimproved lands and have made them liable or otherwise, to taxation for the future purposes of the city. See also City of Cleveland v. Heisley, 41 Ohio. St. Rep. 670. The law with reference to the matter under discussion is succinctly stated in 27 A. &. E. Ency. Law (2nd ed.) p. 897, et seq. and having examined the cases cited in notes 3 and 5 p. 898, I am satisfied they sustain the text. It is proper to say further that I can discover no reason why the foregoing principles should not be applied to this case, because of the character of the debt which had been incurred by the city of Tampa. A careful consideration of the facts and of the reasons of

the court in United States v. Memphis, *supra* will reveal that it was not the character of the debt, i. e. whether the debt was contracted for purely local purposes or otherwise, but the simple fact that the debt was a preexisting one in the creation of which, the added wards of the city had no voice, and with reference to which they had no contract relations with the creditors of the city, was the controlling question.

I concur in the above opinion.   PARKHILL, J.

I concur in the foregoing, on the ground that the affirmance may properly be placed upon either or both theories mentioned in the two opinions.   TAYLOR, J.