STATE OF FLORIDA, *ex rel.* S. M. GRODIN, v. PAUL D. BARNS, H. F. ATKINSON, ULY O. THOMPSON, and WORTH W. TRAMMELL, as Judges of the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, and Railway Express Agency.

161 So. 568.

En Banc.

Opinion Filed May 21, 1935.

406

*W. Clinton Green, Patterson, Blackwell & Knight* and *Daniel Sepler,* for Petitioner;

*Shutts & Bowen, L. S. Bonsteel* and *Joseph F. McPherson,* for Respondents.

ELLIS, P. J.—S. M. Grodin obtained judgment against Railway Express Agency, Inc., a corporation, in the Civil Court of Record for Dade County on February 15, 1933, in the sum of $2500.00. A few days later the plaintiff entered a remittitur in the sum of $212.70, thereby reducing the judgment to $2,287.30.

The Railway Express Agency took a writ of error from the Circuit Court for Dade County on the 27th day of the same month. The writ was returnable to April 6, 1933

The Circuit Court, in an opinion by Honorable Paul D.

Barns, in which two other Circuit Judges of the circuit concurred, reversed the judgment of the Civil Court of Record. The judgment was "filed" and recorded on January 5, 1934, eight months and twenty-nine days after the return day of the writ of error. Immediately following the signature of Honorable Paul D. Barns to the written opinion of the Court appears the symbol "9/18/33," which probably means September 18, 1933, which indicates the date when the cause was "determined," although not when it was heard and considered.

On January 15, 1934, Grodin, by his counsel, interposed a motion or petition for a rehearing. That petition contained fifteen grounds, all of which related to the pleadings and the evidence in the case. Not one attacked the jurisdiction of the Circuit Court to hear, consider and determine the case after a period of five months had elapsed from the return day of the writ of error, the Statute, Chapter 15666, Laws 1931, requiring the Circuit Court to make final disposition of the case within that time.

The motion for rehearing was denied and the Circuit Judge reaffirmed the judgment entered. That order recited that the judgment was entered January 5, 1934, which, as stated, was eight months and twenty-nine days after the return day of the writ of error.

On October 20, 1934, about four months after the order reaffirming the judgment, counsel in behalf of Grodin moved the Circuit Court to vacate its judgment of reversal and its subsequent order reaffirming that judgment upon the ground that the judgment of reversal was entered in violation of Chapter 15666, *supra*, because the court did not determine the cause within five months after the return day of the writ of error and there was no certificate of absence of one or more of the judges of the Circuit Court

or that during that period any one or more of them were incapacitated to act. The motion urged that in such circumstances under the provisions of Chapter 15666, *supra,* the judgment of the Civil Court of Record stood automatically affirmed.

Approximately ten days thereafter the judges of the Circuit Court entered an order denying the motion.

We will quote at this point the reason given by the judges in their written order denying the motion why they took such action. Such reason as given is as follows:

"The Court, being now fully advised in the premises, is of the opinion, and so holds, that the Act of the Legislature in question, wherein it is provided, among other things, that causes lodging in this Court upon writs of error from final judgments of the Civil Court of Record, shall be heard, considered and determined within five months from the return date of said appeals, was, and is, an unwarranted and unconstitutional attempt on the part of the Legislature to interfere with the inherent power of this Court, in an orderly manner and through due process, to properly hear, consider and determine all causes presented on appeal, so that equal opportunity for the intelligent administration of justice, within the scope of its appellate jurisdiction, might obtain."

That order was signed by three of the Circuit Judges, Honorable Atkinson, Thompson and Trammell. Honorable Paul D. Barns filed a concurring opinion in the following words:

"The Constitution of Florida provides: 'The powers of the government of the State of Florida, shall be divided into three departments; Legislative, Executive and Judicial; and no person properly belonging to one of the departments shall exercise any powers appertaining to eihter of the

others, except in cases expressly provided for by this Constitution.'

"Article II, Constitution of Florida, which provision of the Constitution is an express exclusion of each department from exercising the function conferred upon the other, and as has been said, 'during the process of legislation in any mode the work of the lawmakers is not subject to judicial arrest or control nor open to judicial inquiry' and it is in the province of the courts to determine what is the law upon existing cases and the Legislature is without power to direct the affirmance, reversal or modification of any judgment, decree or order of any kind, just and to the same extent that the courts do not have the power to interfere with legislation. A Legislature can fix the laws for the future and it is the function of the courts to declare what is the law applicable to the past."

On February 15, 1935, a petition was filed in behalf of Mr. Grodin in this Court for an alternative writ of mandamus to be directed to the four judges of the Circuit Court for the Eleventh Circuit and to the Railway Express Agency to require the judges to vacate the judgment of reversal entered by them in the case on January 5, 1934, and the subsequent order reaffirming that judgment, to recall the mandate and to enter a judgment of affirmance—that is to say, to make the "statutory affirmance a matter of record."

The alternative writ of mandamus was issued February 25, 1935, and the respondents on March 18th following moved to quash the alternative writ. The grounds of the motion are that Chapter 15666, Acts of 1931, does not control or regulate the procedure upon the determination or disposal of the writ of error to the Civil Court of Record; that the Act is contrary to the Constitution; that it violates Article III, Section 16 of the Constitution; that Sec-

tions 8 and 10 of the Act are contrary to and in violation of Article II, also Section 20 of Article III, Sections 1 and 2 of Article V, of Section 4 of the Declaration of Rights and

"Sections 8 and 10 of Chapter 15666, Acts of 1931 of the State of Florida, and each of them constitute an unwarranted and unconstitutional attempt on the part of the Legislature to interfere with the inherent power of the Circuit Court of the Eleventh Judicial Circuit of Florida, in and for Dade County, to hear, consider and determine in an orderly manner and by due process, all causes presented on writs of error to the Civil Court of Record, so that equal opportunity for the intelligent administration of justice within the scope of its appellate jurisdiction might obtain."

The motion also urges that no legal duty is shown on the part of respondents to comply with the terms of the alternative writ; that it requires nothing of the respondent Railway Express Agency; that the alternative writ affirmatively shows that the judges have fully performed and discharged the judicial functions devolving upon them in connection with the writ of error mentioned; that a peremptory writ would unlawfully control the discretion of the respondent judges and that they have exercised the discretion vested in them under the Constitution of the State of Florida and are not subject to mandamus in this matter.

The question of the validity of Sections 8 and 10 of Chapter 15666, *supra,* in so far as those sections require the Circuit Court to finally hear, consider and determine all causes brought before it on writ of error within five months after the return day of such writ is presented. Section 8 of the Act provides that in case no determination shall be entered of record in any such cause in the Circuit Court within said period, "the judgment of the Civil Court of Record therein sought to be reviewed shall stand automati-

cally affirmed unless it be made to appear by the certificate of one of the judges," where there are more than one judge of the Circuit Court, that one or more of said judges have been absent from *"Dade County,"* or incapacitated to act during the five months period.

Section 10 of the Act provides that it shall be the duty of the Circuit Courts to reverse or affirm the judgment of the Civil Court of record sought to be reviewed as provided for in the Act, or to give such judgment in the cause as the Civil Court of Record ought to have given, and the party to any such cause against whom the judgment of the appellate court may be given shall have ten days within which to file a petition for a rehearing, if he desires to do so. The section directs the Circuit Court to consider the petition and to "pass upon the same" at or before the next regular "appellate term" after such petition shall have been filed if ten days intervene "between such filing" and said next "Appellate Term, or the said petition shall be granted, then said cause shall be reheard and final determination entered therein at or before the next regular Appellate Term of said Court, convening ten days after the granting of such rehearing."

Section 8 declares the second Mondays in January, March, May, July, September and November in each year and such other days as the court may find necessary to be "Appellate days" and the judges, when there are more than one judge of the Circuit Court, are required to sit "in banc" in those days to consider cases on writs of error to the Civil Courts of Record ready for such hearing.

That Section also requires such cases to be brought on for hearing before "said Circuit Courts upon said Appellate Days" in which the briefs of counsel have been filed as provided in the Act or in which the time for filing the same

shall have elapsed and which have not theretofore been disposed of. The section also requires each member of the Court to attend such hearings and a "majority of the judges of said Court shall constitute a quorum and the concurrence of a majority of the members of the Court shall be necessary to a decision, and in default of such concurrence, the judgment of the Civil Court of Record in said cause shall stand automatically affirmed."

Section 5 of the Act provides for the sending up to the Circuit Court on writ of error "all of the original papers, files and proceedings" in the cause.

Section 6 requires the plaintiff in error to file his briefs with the clerk of the appellate court within ten days. Ten days are allowed the defendant after plaintiff's briefs are filed to file his brief and the plaintiff in error then is allowed five days to reply.

The Act is entitled: "AN ACT providing for and Regulating Writs of Error From the Circuit Courts to Those Civil Courts of Record in This State Organized and Existing Under Chapter 11357 of the Laws of Florida, Approved November 30, 1925, and for the Hearing, Consideration and Disposition of the Same."

Section 16 of Article III of the Constitution of 1885 provides that "Each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title."

Only the subject of the Act is required to be expressed in the title. Matters properly connected with the subject of the Act are not required to be expressed in the title. See Hayes v. Walker, 54 Fla. 163, 44 South. Rep. 747; Thompson v. State, 66 Fla. 206, 63 South. Rep. 423; *Ex Parte* Pricha, 70 Fla. 265, 70 South. Rep. 406; *Ex Parte* Gilletti, 70 Fla. 442, 70 South. Rep. 446.

In Lainhart v. Catts, 73 Fla. 735, 75 South. Rep. 47, this Court said, speaking through Circuit Judge Love: The title need not be an index to the Act, it being sufficient if it may reasonably lead to inquiry as to its contents."

Mr. Justice WHITFIELD said, in Butler v. Perry, 67 Fla. 405, 66 South. Rep. 150, "If the title of an Act fairly gives notice of the subject of the Act so as to reasonably lead to an inquiry into the body thereof, it is all that is necessary." In another portion of the same opinion he said: "If the language of the title considered with reference to the legislative intent as shown by the purpose and object of the Act may by any fair intendment cover the subject of the Act, the courts will not, because of an asserted defective title, refuse to give effect to any matter contained in the body of the enactment that is germane to or properly connected with the subject of the law, where the title is not so worded as to mislead an ordinary mind as to the real purpose and scope of the particular enactment." See also State, *ex rel.* Terry, v. Vestel, 81 Fla. 625, 88 South. Rep. 477.

The purpose of the constitutional provision was to prevent the Legislature from embracing in one Act two unconnected subjects. See Schiller v. State, 49 Fla. 25, 38 South. Rep. 706; Fine v. Moran, 74 Fla. 417, 77 South. Rep. 533. And to prevent the title from being a cloak for legislating upon dissimilar matters. See State, *ex rel.* Moodie, v. Bryan, 50 Fla. 293, 39 South. Rep. 929. In this connection it is well to quote the language of Mr. Chief Justice SHACKLEFORD in the above entitled case:

"1. The evils or mischief intended to be remedied by the adoption of this constitutional provision were (a) as

was said in Gibson v. State, *supra,* text 299, quoting and approving the following language from Walker v. Caldwell, 4 La. Ann. R. 298, 'The title of an Act often afforded no clue to its contents. Important general principles were found placed in Acts, private or local, in their operation; provisions concerning matters or practice or judicial proceedings were sometimes included in the same statute with matters entirely foreign to them, the result of which was that on many important subjects the statute law had become almost unintelligible, as they whose duty it has been to examine or act under it can well testify. To prevent any further accumulation of this chaotic mass was the object of the constitutional provision under consideration,' this Court then adding, 'Nearly all of the states having constitutions of recent adoption have incorporated therein provisions in nearly identical language, and their courts agree as to the purpose of such provisions. They also agree that the provision refers to the subject-matter of the Legislation, and not to a single purpose or end sought to be accomplished. Its purpose was to avoid the confusion incident to the evil which had grown out of 'omnibus' legislation.' (b) As was said in State, *ex rel.* Gonzales, v. Palmer, *supra,* text 629, 'Of course one of the purposes of this provision was to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the title gave no notice, and which might, therefore, be overlooked, and carelessly and unintentionally adopted.' (c) 'The purpose of the constitutional provision is to prevent 'hodge podge or log-rolling' legislation, surprise or fraud upon the Legislature by means of provisions in Acts of which the titles give no intimation, and to fairly apprise the people of the subjects of legislation being enacted.' State, *ex rel.* Attorney General, v. Green, *supra,* 5th headnote; County

Commissioners of Duval County v. City of Jacksonville, *supra;* State, e*x rel.* Turner, v. Hocker, *supra;* Webster v. Powell, *supra;* State, *ex rel.* Attorney General, v. Burns, *supra;* Potter v. Lainhart, *supra.*

· The test does not require one first to examine the body of the Act and then determine whether the title in the light of the purpose disclosed by the body of the Act complies with the constitutional requirement because one of the controlling purposes of the constitutional provision is to "prevent surprise or fraud upon the Legislature by means of provisions in bills of which the title gives no notice, and which might, therefore, be overlooked, and carelessly and unintentionally adopted." Another purpose is to prevent surprise or fraud upon the Legislature and to "fairly apprise the people of the subjects of Legislation being enacted." Therefore the title considered in and of itself should reasonably and fairly give notice of what one may expect to find in the body of the Act. If such is not the test then all that has been said about the purpose of the constitutional clause is a meaningless and deceptive combination of words.

Of what purpose is the constitutional clause if legislators and the people who are to be protected from surprises, fraud, "log-rolling" and deceptive legislation must read the proposed enactment first and then the title to ascertain if it measures up to the constitutional standard requiring the subject of the proposed legislation to be briefly stated? Upon reading the title of an Act of the Legislature a person of normal intelligence should be apprised of the subject of the Act (and matters properly relating to it). If the language of the title does not so apprise one of the contents of the Act then obviously the title is defective and the Act is in violation of the constitutional requirement in so far at least as it contains any matter of which the title does not

416

fairly and reasonably apprise the reader of normal intelligence.

The Act under consideration therefore should be measured, in so far as its provisions which are attacked in this proceeding are involved, by the question whether the title gives the required notice of such provisions.

Those provisions are: first, "in all cases where there are more than one judge of said Circuit Court, it shall be the duty of each member of the Court to attend such hearings and a majority of the judges of said court shall constitute a quorum and the concurrence of a majority of the members of the Court shall be necessary to a *decision,* and in default of such concurrence, the judgment of the Civil Court of Record in said cause shall stand automatically affirmed." (Italics supplied.)

There are three classes of decisions which the circuit judges may render under the provisions of the Act: one, a decision of affirmance; two, a decision of reversal, and three, a decision giving such judgment in the cause as the Civil Court of Recohd ought to have given. Section 10.

These provisions are clearly embraced within and relate to the subject of the hearing, consideration and disposition of the writs of error on which cases are brought from the Civil Courts of Record to the Circuit Courts for review and follow a rule long established in this State as to the disposition of cases in the Supreme Court as an appellate tribunal when there is an equal division of the members of the Court as to whether or not a judgment should be reversed and there is no prospect of an immediate change in the personnel of the court the judgment of the lower court is affirmed. See State, *ex rel.* Hampton, v. McClung, 47 Fla. 224, 37 South. Rep. 51.

The rule announced in that case has long obtained in this

State and merely means that when the plaintiff in error is unable to convince a majority of the members of the court that substantial error was committed in the trial of the case below the judgment stands affirmed. So it would seem that the proposition that the rule should apply in cases brought to the Circuit Court from Civil Courts of Record under the Act, Chapter 15666, *supra,* is reasonably forecast by the title.

Second, "It shall be the duty of said Circuit Court to finally hear, consider and determine the causes brought to said Court upon said writs of error within five months after the return day of such writ, and in case no determination shall be entered of record in any such cause in said Court within said period, the judgment of the Civil Court of Record therein sought to be reviewed shall stand automatically affirmed."

That provision presents something more of a difficulty which is increased by the careless language of the following clause preceded by the conjunction "unless," which is as follows: "unless it be made to appear by the certificate of one of the judges or by the Clerk of said Appellate Court that one or more of said judges have been absent from *Dade County* or incapacitated to act during said five months' period." (Italics supplied.)

Under the provisions of Chapter 11357, Laws of 1935, Civil Courts of Record are required to be established in each county in the State of Florida which has or shall have a population of more than one hundred thousand according to the last State census. When that Act becomes effective in counties other than Dade County the provision, that the period in which the appellate court shall determine the cause may be extended by a certificate showing that one of the Circuit Judges of the Court to which the appeal was

taken was absent from *"Dade County,"* is absurd and contradicts the purpose to require a determination of the case within five months as the same applies to all such counties other than "Dade" because in other circuits having one or more Circuit Judges in which circuits there may be a county in which a Civil Court of Record has been established such a certificate may be made at any time and the period in which the decision shall be rendered would be indefinitely lengthened.

The law therefore is unequal and not uniform because it discriminates against the "Dade County" appellate court and against litigants before that court. The Act, Chapter 15666, *supra,* being a general law would not thus be uniform throughout the State. See Section 21, Article III, of the Constitution.

It may be said that the term *"Dade County,"* used in Section 8 of the Act was a *lapsus calami"* of the writer of the bill, which was introduced and became Chapter 15666, *supra.* However that may be the use of the term was a deliberate Act of the Legislature and there is no authority in the court to strike down the term and substitute another which would relieve the Act of that criticism.

It is a fundamental principle of statutory construction that the intention of the Legislature is to be obtained primarily from the language used in the statute. The court must impartially and without bias review the *written* words of the Act being aided in their interpretation by the canons of construction. Where the language of a statute is plain and unambiguous there is no occasion for construction even though other meanings could be found. The court has no power to indulge in speculation as to the probable or possible qualifications which might have been in the mind of the Legislature but the statute must be given effect accord-

ing to its plain and obvious meaning and cannot be extended beyond it because of some supposed policy of the law or because the Legislature did not use proper words to express its meaning or the court would be assuming legislative authority.

It is true that within the above principle of statutory construction there lies the doctrine that where an adherence to the strict letter would lead to absurdity the duty devolves upon the court of ascertaining the true meaning, that it should not attribute to the Legislature the enactment of a statute devoid of purpose. Nevertheless that doctrine is qualified by the unvarying rule that where the language is clear and unambiguous but at the same time incapable of reasonable meaning the court has no power to construe the statute to give it a meaning.

The above language in substance is taken from 59 C. J. 952, 958; the intervening pages crowded with citations of opinions and decisions from the Federal Courts and from thirty-nine or forty states of the Union, including the State of Florida. See U. S. v. Missouri Pac. R. Co., 278, U. S. 269, 72 L. Ed. 322; Com. of Immigraiton of Port of N. Y. v. Gottlieb, 265 U. S. 310, 44 Sup. Ct. Rep. 528, 68 L. Ed. 1031; Russell Motor Car Co. v. U. S. 261, U. S. 514, 43 Sup. Ct. Rep. 428, 67 L. Ed. 778; Osborne v. Simpson, 94 Fla. 793, 114 South. Rep. 543; State v. Beardsley, 84 Fla. 109, 94 South. Rep. 660; State, *ex rel.* Triay v. Burr, 79 Fla. 290, 84 South. Rep. 61; Fine v. Moran, 74 Fla. 417, 77 South. Rep. 533.

It is useless to cite more authorities upon this general proposition. In the opinions rendered in those cases the reason and philosophy of the law and the necessity for the rule as expressed above are fully set forth. Those reasons

are known to the members of the bar and ingrafted in the consciousness of every well informed person.

The Court is not a lawmaking body. It has no legislative power. It may not sit in judgment upon the wisdom of legislative policy on which an enactment of the Legislature rests. If the Court should strike out the words *"Dade County"* and substitute other words or merely eliminate the words "From Dade County" the Act would be restored to a reasonable, consistent and uniform purpose and exclusive of the particular clause be consistent and in harmony with the constitutional requirement of uniformity. But what power under the law has the court to eliminate those words? They are not ambiguous. They are prefectly clear and most definitely certain in meaning. To eliminate them is to legislate; to ignore them is to violate the fundamental canons of statutory construction.

The writer is therefore of the opinion that the words may not be eliminated but they constitute a part of the legislative act and must be given their true and definite meaning.

If the clause in which the words appear is eliminated as being in violation of the constitutional requirement of uniformity of operation, it cannot be said that the Legislature would have enacted the statute without such clause. It cannot be justly said that the title of the Act gives fair and reasonable notice of such provision. The proposition which resulted in the enactment of the statute when first submitted to the Legislature may have been prepared as a local measure and afterwards attempted to be changed to a general law to meet the requirements of Section 20 of Article III of the Constitution. If so the work of reconstruction was not carefully performed.

The Senate Journal, however, shows that the number of

the bill was 581 and when introduced carried the same title as appears in the printed statutes.

It is asserted that the provision of the Act requiring a decision by the appellate court of the causes brought to it on writ of error within five months after the return day of the writ or the judgment sought to be reviewed shall stand automatically affirmed is void.

The constitutional appellate jurisdiction of Circuit Courts is limited to cases civil and criminal arising in the County Court or before the County Judge of misdemeanors tried in Criminal Courts of judgments or sentences of any mayor's court and of all cases arising before Justices of the Peace in counties where there is no County Court, and supervision and appellate jurisdiction of matters arising before County Judges pertaining to their probate jurisdiction, or to the estates and interests of minors, and of such other matters as the Legislature may provide. See Sec. 11, Art. V, Const.

Chapter 15666, *supra,* did not create of the Circuit Courts in circuits where Civil Courts of Record may be established courts of final appellate jurisdiction in cases arising in the Civil Courts of Record. It merely provided for the exercise of such jurisdiction by such Circuit Courts under the express constitutional authority above mentioned.

Chapter 11357, Laws 1925, Extraordinary Session, was enacted under the provision in Section 1 of Article V of the Constitution, that the judicial power of the State shall be vested in a Supreme Court, Circuit Courts, Court of Record of Escambia County, Criminal Courts, County Courts, County Judges' Courts and Justices of the Peace, and *"such other Courts* or Commissions as the Legislature may from time to time ordain and establish."

The legislative purpose in the enactment was to relieve Circuit Courts in that field of their common law jurisdic-

tion where the demand or value of the property involved would be more than five hundred dollars and less than five thousand. Such controversies being cognizable by Circuit Courts in the exercise of original jurisdiction, judgments were reviewable on writs of error by the Supreme Court. In the establishment of courts whose original jurisdiction is less as to the value of the subject matter of the litigation than that of the Circuit Court in counties having a population of one hundred thousand the Legislature merely substituted appellate for original jurisdiction by the Circuit Courts in all cases arising in the Civil Courts of Record which, as above stated, were before the enactment cognizable by the Circuit Courts in the exercise of their original jurisdiction.

A similar Act, Chapter 8521, Laws of Florida, 1921, under which the Civil Court of Record of Duval County was established, Sects. 3310-3324 R. G. S. 1920, was referred to by this Court in State v. Sullivan, 95 Fla. 191, 116 South. Rep. 255, and the validity of such legislation was indircetly sustained upon the theory that under the provisions of Article V, Section 1, the Legislature has the power to divide the jurisdiction prescribed by the Constitution to be exercised by the courts enumerated therein between such courts and others which may be created by the Legislature. The court has also held that a Civil Court of Record established under Chapter 8521, *supra,* may be abolished by special Act of the Legislature and in such case the full exclusive jurisdiction of the Circuit Court in such county where the Civil Court of Record was established is reinstated in all cases of which the Civil Court of Record had jurisdiction. See State, *ex rel.* Landis, v. Dickenson, 103 Fla. 907, 138 South. Rep. 376; Whitlock v. Am. Cent. Ins. Co., 107 Fla. 13, 144 South. Rep. 412.

See also State, *ex rel.* Veal, v. Barrs, 105 Fla. 27, 140 South. Rep. 908, for a discussion of the creation, history, legal status and purposes of Civil Courts of Record organized in Duval County under Chapter 6904, Laws of 1915. See Sections 3310, 3324 R. G. S., *supra.*

The appellate jurisdiction of the Circuit Courts in all cases arising in Civil Courts of Record which the Legislature may establish exists therefore by virtue of the Constitution which in Section 11 of Article V vests the Circuit Courts with supervision and appellate jurisdiction of matters arising before County Judge pertaining to their probate jurisdiction or to estates and interests of minors, and of such other matters as the Legislature may provide.

It has been held that where the jurisdiction is appellate or supervisory a statute which attempts to give the Circuit Court whose jurisdiction is appellate the power to try an appealed case *de novo* is inoperative. See State. v. King, 20 Fla. 399; State, *ex rel.* Nichols v. Bullock, 58 Fla. 534, 50 South. Rep. 418; State, *ex rel.* Hopps v. Horne, 75 Fla. 149, 77 South. Rep. 672.

Now the Statute, Chapter 15666, *supra,* by Section 1, conforms to the constitutional purpose as to the Circuit Court's appellate jurisdiction by providing that such courts shall have "final appellate jurisdiction in all civil cases arising in such Civil Court of Record."

The term "final" means conclusive, decisive, definitive, as a final judgment. See Webster's New International Dictionary, Second Edition.

Appellate jurisdiction is the power vested in a superior tribunal to review and revise the judicial action of an inferior tribunal. See 3 C. J., 356; State v. Smith, 104 Mo. 419, 16 S. W. Rep. 415.

While it may be true that the right of a suitor to have his rights examined in tribunals superior to those in which he considers himself aggrieved pertains to the remedy and in the absence of constitutional inhibition it is within the power of the Legislature to prescribe the cases in which and the courts to which parties shall be entitled to bring a cause for review and to impose conditions and restrictions as it may see fit, yet when the right to appellate review is given or secured by the Constitution it cannot be taken away or impaired by the Legislature nor can the Legislature confer appellate jurisdiction in conflict with constitutional provisions. See 3 C. J., 298.

As to the remedy by writs of error from the Circuit Court to Civil Courts of Record, that is to say, the right or remedy of review in such cases is secured by the Constitution, the Legislature has no control over it. In this State the Constitution definitely secures to a suitor the right of review by the Circuit Court as it expressly provides that the Circuit Court shall have "supervision and appellate jurisdiction of matters arising before the County Judges pertaining to their probate jurisdiction, or to the estates and interests of minors, and of such other matters as the Legislature may provide." Sec. 11, Art. V, Const.

The Legislature has provided for the exercise of appellate jurisdiction by the Circuit Court in matters arising in Civil Courts of Record. Having made provision in such matters the constitutional power of supervision and appellate jurisdiction obtains.

But in the provisions of the Act criticized the Legislature has attempted not only to limit the exercise of the Circuit Court's appellate jurisdiction but to impose conditions upon its exercise and to substitute a legislative judgment in place of the appellate court's judgment in the event the

court fails to exercise its appellate power within a certain period.

The limitation is five months. If the Legislature may impose such a condition it may just as well prescribe two months or two weeks or one day within which the appellate court shall exercise its power of review. It may be said that the period fixed by the Legislature, if it undertook to prescribe one day or two months as the period in which the appellate power shall be exercised would be subject to the court's determination of the reasonableness of such a provision, but it is not a question of the reasonable exercise of a power conceded to exist in the lawmaking branch of the government, but whether any such power at all exists in the matter of such attempted regulation and substitution of a legislative judgment.

The clause criticized is invalid not only because not within the power of the Legislature to enact but it deals with a matter not related to the subject of the bill.

The motion to quash the alternative writ is granted.

BROWN and BUFORD, J. J., concur,

WHITFIELD, C. J., and TERRELL, and DAVIS, J. J., specially concur in part.

DAVIS, J. (concurring in part).—I agree that Sections 8 and 10 of Chapter 15666, Acts 1931, insofar as they require the Circuit Court, as a court of appeal, to finally hear, consider and determine all causes within five months is presently unconstitutional because that provision is not sufficiently covered in the title to the Act. But I think that the foregoing conclusion having been reached and stated by the Court, any additional particularized discussion of the power of the Legislature in general to enact laws designed to so control the judiciary as to speed up the administration of justice in the appellate courts, should be left for future

adjudication in a proper case clearly requiring a decision on the scope of the Legislative power in the premises.

The Constitution enjoins, in the Bill of Rights (Section 4) that right and justice shall be administered without *sale, denial,* or *delay.* Thus, our own organic law recognizes as a matter of law the fact that is otherwise well known to all people as a matter of common knowledge, that unduly delayed justice is, in many cases, denied justice. On no other theory could the Bill of Rights have denounced in the same breath the sale and denial of justice in connection with "delay" in its administration.

Courts, of course, have acknowledged inherent power to adopt and promulgate their own rules of practice as well as rules to control their own proceedings within reasonable limitations.

But this is a government of law, not of men, and the courts are as much bound to observe the law as laid down by the lawmaking power, as are others not vested with judicial prerogatives. Rules of court must therefore be subordinate to any appropriate provisions of statutes, or the organic law, and in case of conflict, the law, not the pleasure of the judges, will prevail. 7 R. C. L., page 1024. The most pronounced exception to this rule is that courts as such cannot have their own peculiar judicial workings of internal management of the disposition of cases invaded by the lawmakers.

This Court has frequently upheld and declared itself bound by the Florida "harmless error" statute, although the only logical theory on which this Court and other courts could have sustained such a statute as the "Harmless Error" statute (Section 4499 C. G. L., 2812 R. G. S.) is that the Legislature is possessed of a limited degree of power to make laws to control the judicial prerogative of making its

own independent rules of decision, when to do so is for the purpose of *advancing* the cause of justice, and not to embarrass or hinder it, and when to do so is in furtherance of the mandate of the Constitution to the Legislature to so construct the statutory laws applying to the courts that justice can and will be administered therein without undue "delay."

Thus the Legislature provides for avoidance of "delay" gained through prosecution of appellate proceedings, by directing our appellate courts to enter a judgment of affirmance ignoring procedural errors in any case that would otherwise be reversed for an unnecessary retrial with the "delay" attendant thereon. If we acknowledge the power of the Legislature to pass a "harmless error" statute as broad as ours, we cannot consistently maintain that we do not thereby concede the power of the lawmaking body to control the judicial judgment of this Court to the extent of compelling it to disregard *pro hoc vice* the established law of the land requiring a reversal of erroneous judgments when entered in cases generally of like character, when tried under different circumstances.

While I do not think the subject one that should be dealt with at all at this time, I make the observations hereinbefore stated, in order to indicate that I do not subscribe to any unqualified doctrine that the courts, *qua* judicial tribunals, are wholly immune from reasonable legislative directions, or appropriate statutory mandates controlling their proceedings and judgments when same are properly calculated to advance the prompt decision of a controversy without the commonly experienced "delays" that are day by day becoming more and more a cause of public complaint against

the very existence of a judicial system as a part of our government.

WHITFIELD, C. J., and TERRELL, J., concur.